

**FILED**

Jun 19 2015, 9:31 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Daniel J. Paul
Williams Barrett & Wilkowski, LLP
Greenwood, Indiana

ATTORNEYS FOR APPELLEE INDIANA
ATTORNEY GENERAL

Gregory F. Zoeller
Attorney General of Indiana

Frances Barrow
Aaron T. Craft
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Trust Created Under the Last Will and Testament of Marion A. Peeples, Deceased, | June 19, 2015 |
| | Court of Appeals Case No. 41A01-1412-TR-513 |
| Johnson County Community Foundation as Successor Trustee of the Marion A. Peeples Foundation Charitable Trust, | Appeal from the Johnson Superior Court |
| | The Honorable Kevin M. Barton, Judge |
| *Appellant-Petitioner* | Trial Court Cause No. SE79-23 |

**Bradford, Judge.**

## Case Summary

After Marion Peeples and his wife Eve passed away, the trust provided for in their wills was established ("The Trust"). The Trust provided for the award of scholarships to Indiana high school graduates, preferably from Franklin High School, who wished to pursue post-secondary education in certain fields. Union Bank & Trust was initially the trustee of the Trust, and, through mergers and acquisitions, JPMorgan Chase Bank, N.A. (collectively, "the Bank"), took over.

In 2013, the Johnson County Community Foundation ("JCCF"), which had been managing the scholarship program for the Bank since 2000, petitioned the trial court to be appointed trustee for the Trust. The trial court granted JCCF's petition in an order that limited JCCF's fee to 1.5% of trust assets per year and required it to receive court approval before engaging the service of certain third-parties under certain circumstances. JCCF now appeals, contending that the trial court abused its discretion in imposing restrictions on its administration of the Trust. The Attorney General of Indiana appears on behalf of the Trust beneficiaries and argues that JCCF's arguments are not ripe for appellate review. JCCF counters that the Attorney General's arguments were not properly preserved. Because we conclude that (1) the Attorney General's arguments were properly preserved, (2) JCCF's arguments are ripe, and (3) the trial court did not abuse its discretion in imposing restrictions on JCCF's administration of the Trust, we affirm.

# Facts and Procedural History

[3] On February 28, 1962, Marion Peeples and his wife Eva Peeples each executed a last will and testament. The wills included provisions for the establishment of the "Marion A. Peeples and Eva S. Peeples Foundation Trust," or the Trust. Appellant's App. p. 35. The Trust established separate scholarship funds for male and female students. The female scholarship was established for Franklin College for the benefit of graduates of any Indiana high school (preferably Franklin Community High School) interested in pursuing nursing or dietetics (preferably at Franklin College). The male scholarship fund was established for Franklin Community High School for the benefit of graduates of that high school who are seeking "training in teaching in the field of industrial arts" (preferably at Franklin College). Appellant's App. p. 37. The language creating the Trust grants the trustee the power to "employ such attorneys, auditors, accountants, or other assistants, as are, in the judgment of the Trustee, necessary, and to pay their compensation from the Trust Property." Appellant's App. p. 42. Between 2001 and 2014, $1,049,583.00 was distributed to scholarship recipients.

[4] On July 11, 1971, Marion died, followed by Eva on October 5, 1978. On March 29, 1979, the Bank petitioned Johnson Superior Court to docket the Trust, which petition the trial court granted on April 2, 1979. In 2000, the Bank approached JCCF to manage the scholarships. Until 2005, the Bank paid JCCF $30,000.00 per year to manage the scholarship programs and $20,000.00 per year after.

[5] On March 26, 2013, JCCF filed a petition of proposed successor trustee to appoint successor trustee ("the Petition") and the Bank made filings indicating its desire to resign as trustee. At the time, the balance of the Trust was $1,292,662.65. On May 31, 2013, the Indiana Attorney General, on behalf of the beneficiaries of the Trust, indicated that it had no objection to the appointment of JCCF as the successor trustee.

[6] On June 3, 2013, the trial court held a hearing on the Petition, at which no party other than JCCF appeared and presented evidence. JCCF President Gail Richards testified and was cross-examined by counsel for Franklin College. Richards testified on cross-examination that JCCF had never administered a trust before and that the fees JCCF were seeking were 1.5% of the balance of the Trust.

[7] On October 18, 2013, the trial court issued its order accepting the Bank's resignation as trustee of the Trust, appointing JCCF trustee, and approving the Bank's accounts for 2011 and 2012. The order provides as follows:

> The Court being duly advised in the premises, now
> FINDS AND ORDERS as follows:
>
> 1. The above cause of action came before the Court for hearing on the Verified Petition of Trustee to Appoint Successor Trustee And Verified Petition Of Proposed Successor Trustee To Appoint Successor Trustee. Testimony was presented to the Court by Gail Richards, Director.
>
> 2. J.P. Morgan Chase Bank, N.A filed it's [*sic passim*] Trustee's Statement of Account for 2011 and 2012. By Notice of Opportunity To File Objection to Trustee's Accounts the Court

provided all interested parties with notice and opportunity to file objection to the Trustee's Statement of Account for 2011 and 2012. No objections were filed.

3. By Attorney General's Response, the Attorney General stated that no objection was made to the Verified Petition of Trustee to Appoint Successor Trustee And Verified Petition Of Proposed Successor Trustee To Appoint Successor Trustee.

4. From the evidence submitted to the Court, J.P. Morgan Chase Bank is now administering the Trust from a trust officer out of state. J.P. Morgan Chase Bank has submitted it's resignation as trustee because it deems the size of the trust insufficient to effectively manage.

5. Request is made for the Johnson County Community Foundation to be appointed as Successor Trustee of the Peeples Trust. Johnson County Community Foundation has expertise in the management of investments for charitable and benevolent purposes as a community foundation. The Johnson County Community Foundation has expertise in financial management. However, the Johnson County Community Foundation has not previously acted as trustee for a benevolent trust.

6. From the testimony presented at [the] hearing, the Court identifies two matters of concern: trustee fees and identification of trust recipients.

7. As to trustee fees, it was disclosed that J.P. Morgan Chase Bank had contracted with the Johnson County Community Foundation to fulfil local trustee duties, including encouraging applicants for the trust, screening applicants and determining who should receive disbursements from the trust. A fee was initially charged in the amount of $30,000.00 but was subsequently reduced to $20,000.00 after J.P. Morgan Chase Bank assumed the duty of making distributions from the trust to the educational institutions of the selected trust recipients. J.P. Morgan Chase Bank did not request court approval to utilize the

services of the Johnson County Community Foundation in fulfilling it's duties as Trustee. Inasmuch as J.P. Morgan Chase Bank was authorized to charge for it's services a[t] it's usual and customary rates for trust services, it was contemplated that the fees assessed were for all aspects in serving as trustee. The accountings filed by J.P. Morgan Chase Bank show that the effective annual charge by J.P. Morgan Chase Bank in serving as trustee was 1.2% of the trust assets. After including the additional amount charged by the Johnson County Community Foundation, the effective annual charge for trustee services rises to 2.7% of the trust assets. The trustee fees constitute approximately 64% of the amount disbursed to the trust recipients. The court finds that the fees charged in relation to the amounts disbursed to be excessive.

However, the Court is also mindful that the banking landscape has changed considerably from the time when the Peeples Trust was created. The locally based trust company has largely been relegated to history.

8. A concern was also noted regarding identification of students to apply for disbursements from the trust. Ms. Richards testified that the Foundation had placed notice of opportunity to apply for benefits under the trust with other community foundations. The trust states a clear preference to benefit students attending Franklin Community High School. The Court makes clear that the terms of the trust need to be closely followed.

9. The Court determines as follows:

A. The resignation of J.P. Morgan Chase Bank, N.A. as the Trustee of the Marion A. Peeples and Eva S. Peeples Trust is granted.

B. The petition for appointment of the Johnson County Community Foundation as successor trustee of the Marion A. Peeples and Eva S. Peeples Trust is granted subject to the terms herein set forth.

C.      The fees charged by J.P. Morgan Chase Bank, N.A., including the amount paid to the Johnson County Community Foundation, for 2011 and 2012 are reserved for consideration.  J.P. Morgan Chase Bank, N.A. shall tender within forty-five (45) days of the date of this Order, the rate structure used by J.P. Morgan Chase Bank, N.A. in assessing trustee fees and the authority for incurring additional charges for trustee duties above the rate structure either by the terms of trust or by statute.  J.P. Morgan Chase Bank, N.A. may submit to the Court the rate structure for other similar trust institutions in support of the fee petition.

D.      The fees charged by Johnson County Community Foundation in serving as Trustee shall be limited to one and one-half percent (1 ½%) of the Trust assets annually, although payment for services may be made on a quarterly or monthly basis.  Any request for payment of fees in addition to such amount shall be supported by time records that support the additional fee or financial report regarding administrative expenses in administering assets.

E.      If any third party is to be engage[d] to provide services to the Peeples Trust that is not included within the said one and one-half percent (1 ½%) annual administrative fee, prior Court approval shall be required before the third party is engaged to provided [*sic*] services.  The Johnson County Community [Foundation is specifically directed to make no disbursement from the Peeples Trust for such third party] services without express court authorization.

F.      The Johnson County Community Foundation shall include in it's annual report as Trustee the efforts made in seeming applicants for trust benefits and the secondary school of the trust recipient in sufficient detail so that the court may determine compliance with the trust intention.

G.      Except as reserved as to fees as hereinabove set forth, the Trustees Statement of Account for 2011 and 2012 is approved.

Appellant's App. pp. 13-15.

[8]     On November 27, 2013, the Bank filed a supplemental brief addressing the fee issue. On April 3, 2014, the trial court issued an order approving the Bank's fees, in which it also ordered that "[t]he scholarships awarded and the expense of administration allocated to income shall not exceed the income of the trust." Appellant's App. p. 17.

[9]     On May 5, 2014, JCCF filed a motion to correct error. On October 23, 2014, the trial court held a hearing on JCCF's motion to correct error. The Indiana Attorney General appeared at the hearing. On November 6, 2014, the trial court granted JCCF's motion to correct error in part and denied it in part. The order on JCCF's motion to correct error provides as follows:

> The above cause of action came before the Court for hearing on the 23rd day of October, 2014 on the Motion To Correct Error filed by Successor Trustee, Johnson County Community Foundation, hereinafter referred to as JCCF, on May 5, 2014. Johnson County Community Foundation appeared by it's [*sic passim*] President and Chief Executive Officer, Gail Richards, and by counsel, William Bennett, Esq. and Daniel Paul, Esq. Indiana Attorney General appeared by Deputy Attorney General Justin Hazlett, Esq. Ms. Richards sworn. Evidence is presented.
>
> And the Court, being duly advised in the premises, now FINDS as follows:
>
> 1.     The Motion To Correct Error addresses certain issues as to the Court's Order Accepting Resignation Of Trustee And Appointing Successor Trustee And Order Regarding Fees And Approval Of Trustee's Account For 2011 And 2012 dated October 18, 2013, to-wit:

> A.   Limitation on fees charged by JCCF;
>
> B.   Express authorization required before contracting with third parties for services.
>
> 2.   The Motion To Correct Error addresses an issue in the Court's Order Regarding Trustee's Fees For 2011 And 2012 And Trust Administration dated April 3, 2014, to-wit:
>
> > A. Any limitation on scholarships awarded and expenses of administration to income.
>
> 3.   At hearing, JCCF requested that the Court rescind the portion of the Order of October 18, 2013 that limits the "fees charged by Johnson County Community Foundation in serving as Trustee shall be limited to one and one-half percent (1 ½%) of the Trust assets annually, although payment for services may be made on a quarterly or monthly basis." JCCF asserted that the basis of the request is that the fee schedule of JCCF for the administration of trusts was two percent (2%) of trust assets. Ms. Richards testified that the fee schedule for administration of trusts was set by the JCCF Board on March 21, 2012.
>
> 4.   At hearing conducted on June 3, 2013, the following testimony was presented:
>
> > Question by Mr. Huddleston:  So what will be your fees if the Judge approves you as Trustee?
> >
> > Answer by Ms. Richards:  Well according to managing a trust - our internal fees right now are one and a half percent of the balance of the fund taken out once a month so whatever the balance of the fund is on a monthly basis it would be one and a half percent.
> >
> > …
> >
> > Question by Mr. Huddleston:  So the one and a half is regardless of the amount of time you put in, you automatically bill this trust one and a half percent?
> >
> > Answer by Ms. Richards:  Just like we do every other fund that we manage.

Question by Mr. Huddleston: So the answer is yes?

Answer by Ms. Richards: Yes."

5. At [the] hearing on June 3, 2013, no evidence was presented that JCCF would charge a different fee for the administration of trusts, i.e. 2% of the fund balance, as opposed to the fee charged to administer other funds administered by JCCF, i.e. 1 1/2% of the fund balance. The Court relied upon the testimony provided by Ms. Richards in appointing JCCF as Successor Trustee. Ms. Richards' testimony formed the basis for paragraph 9(D) of the Court's Order Accepting Resignation Of Trustee And Appointing Successor Trustee And Order Regarding Fees And Approval Of Trustee's Account For 2011 And 2012 dated October 18, 2013.

6. Ms. Richards acknowledged that a cost analysis had not been performed to determine the cost to JCCF to administer the Trust. The time required to administer the trust was unknown. On November 27, 2013, J.P. Morgan Chase filed it's Response To The Court's Order of October 18, 2013. The fee schedule provided by J.P. Morgan Chase resulted in a Trustee's compensation of 1.52% of Trust assets based upon the principal balance as of December 31, 2012. Fee schedules were also submitted from other trust companies. The fees schedules were all slightly less than the fee of J.P. Morgan Chase although the fees were close to that charged by J.P. Morgan Chase.

7. The Court does not find error in it's Order Accepting Resignation Of Trustee And Appointing Successor Trustee And Order Regarding Fees And Approval Of Trustee's Account For 2011 and 2012 dated October 18,2013 in setting the Trustee's fee at one and a half percent (1 ½%) of the asset balance annually. The Court accepted the fee quoted by JCCF when it sought appointment as Successor Trustee. The Court does not amend its Order Accepting Resignation Of Trustee And Appointing Successor Trustee And Order Regarding Fees And Approval Of Trustee's Account For 2011 And 2012 dated October 18, 2013 as to the fees authorized to be paid to the

Successor Trustee.  If JCCF now finds that it is not able to administer the Marion And Eva Peeples Trust based upon the testimony provided at hearing on June 3, 2013, JCCF may resign as Successor Trustee.

8.     The Court turns to the second basis of the Motion to Correct Error.  JCCF seeks to be relieved of the requirement that JCCF seek Court approval for fees paid to third parties.

9.     The Court's restriction on fees arose from the amount paid to J.P. Morgan Chase and JCCF for trust administration.  The Court determined that the services provided by J.P. Morgan Chase and JCCF amounted to trust administration.  Based upon the asset balance as of December 31, 2012, the amount paid to J.P. Morgan Chase and JCCF for trust administration was in the amount of 3.1% of trust assets.  This amount was determined to be higher than trust fees of other corporate fiduciaries for trust management especially when a cost analysis had not been performed to determine the cost of providing services.  Significantly, JCCF likewise viewed the amounts charged by J.P. Morgan Chase and JCCF as being duplicitous [*sic*]:  Board Member Bill Kiesel testified at [the] hearing on June 3, 2013:  "It came to the attention of the Board that we were doubling up fees by having a trustee who really didn't want to be trustee and those were Robin's words - not mine.  It didn't fit the parameters of what Chase wanted to do and Robin and I did have conversations about other alternatives, but it seemed to make sense that because we don't want to pay double fees to another trustee that the foundation be allowed to be the trustee and eliminate those fees and use the money saved for scholarships."

10.     Ms. Richards testified that JCCF might require services of an attorney and tax preparer and that fees on investments would be incurred.  Ms. Richards clarified that fees on investments consisted of transactional fees as opposed to investment management.

11. Paragraph 9(E) of the Court's Order Accepting Resignation Of Trustee And Appointing Successor Trustee And Order Regarding Fees And Approval Of Trustee's Account For 2011 And 2012 dated October 18, 2013 provided:

"E. If any third party is to be engage to provide services to the Peeples Trust that is not included within the said one and one-half percent (1 ½%) annual administrative fee, prior Court approval shall be required before the third party is engaged to provided services. The Johnson County Community Foundation is specifically directed to make no disbursement from the Peeples Trust for such third party services without express court authorization."

12. Normal transactional fees to third party brokerage firms was not contemplated within the provisions of paragraph 9(E) of the Court's Order Accepting Resignation Of Trustee And Appointing Successor Trustee And Order Regarding Fees And Approval Of Trustee's Account For 2011 And 2012 dated October 18, 2013. Consequently, normal transactional fees to third party brokerage firms are excluded from paragraph 9(E) of the Court's Order Accepting Resignation Of Trustee And Appointing Successor Trustee And Order Regarding Fees And Approval Of Trustee's Account For 2011 And 2012 dated October 18, 2013.

13. Fees to tax preparers are required to comply with federal and state requirements. Tax preparation fees charged at the customary hourly rate by third party tax preparers should likewise be excluded from the provisions of paragraph 9(E) of the Court's Order Accepting Resignation Of Trustee And Appointing Successor Trustee And Order Regarding Fees And Approval Of Trustee's Account For 2011 And 2012 dated October 18, 2013.

14. Attorney fees provided to a fiduciary are customarily subject to oversight. See Indiana Code 29-1-10-13, Indiana Code 29-3-9-9. The Court does not find a reason to exclude attorneys from paragraph 9(E) of the Court's Order

Accepting Resignation Of Trustee And Appointing Successor Trustee And Order Regarding Fees And Approval Of Trustee's Account For 2011 And 2012 dated October 18, 2013.

15. Based upon a need for greater oversight arising from past duplicitous charges for trustee services, the Court otherwise finds that paragraph 9(E) of the Court's Order Accepting Resignation Of Trustee And Appointing Successor Trustee And Order Regarding Fees And Approval Of Trustee's Account For 2011 And 2012 dated October 18, 2013 is appropriate subject to the modification and clarification set forth in paragraphs twelve and thirteen above. JCCF does not provide evidence of the need for other services or present evidence that paragraph 9(E) will hinder the administration of the trust.

16. The Court next turns to the Paragraph 7 of the Order Regarding Trustee's Fees For 2011 and 2012 And Trust Administration of April 3, 2014, which provides: "7. The scholarships awarded and the expense of administration allocated to income shall not exceed the income of the trust. "

17. JCCF asserts that paragraph 7 of the Order of April 3, 2014 restricts the discretion granted to the Trustee to utilize principal for trust purposes under the terms of the Peeples Trust. In reviewing JCCF's Hearing Brief as well as the provisions cited by JCCF of the Last Will and Testament of Marion Peeples, the Court concurs.

18. Accordingly, JCCF's Motion To Correct Errors as to Paragraph 7 of the Order Regarding Trustee's Fees For 2011 and 2012 And Trust Administration of April 3, 2014 is granted. Paragraph 7 of the Order Regarding Trustee's Fees For 2011 and 2012 And Trust Administration of April 3, 2014 is vacated.

19. The Court does not identify any other basis of the Motion to Correct Errors either by the terms of the Motion To Correct Errors or by Hearing Brief. Accordingly, except as specifically granted, the

Motion to Correct Errors is denied.

IT IS THEREFORE ORDERED BY THE COURT AS FOLLOWS:

A.    Motion To Correct Error as to the restriction on Trustee Fees charged by Johnson County Community Foundation as Successor Trustee under Paragraph 9(D) of the Order Accepting Resignation Of Trustee And Appointing Successor Trustee And Order Regarding Fees And Approval Of Trustee's Account For 2011 And 2012 dated October 18, 2013 is denied;

B.    Motion to Correct Error as to Paragraph (E) of the Court's Order Accepting Resignation Of Trustee And Appointing Successor Trustee And Order Regarding Fees And Approval Of Trustee's Account For 2011 And 2012 dated October 18, 2013 is granted and denied as follows:

   i)    Normal transactional fees to third party brokerage firms are excluded from paragraph 9(E);

   ii)    Tax preparation fees charged at the customary hourly rate by third party tax preparers are excluded from paragraph 9(E);

   iii).    Except as provided under paragraph i and ii, Paragraph 9(E) will remain unaltered;

C.    Motion to Correct Error as to Paragraph 7 of the Order Regarding Trustee's Fees For 2011 and 2012 And Trust Administration of April 3, 2014 is granted.  Paragraph 7 of the Order Regarding Trustee's Fees For 2011 and 2012 And Trust Administration of April 3, 2014 is vacated;

D.    Except as herein granted, the Motion to Correct Error is denied.

Appellant's App. pp. 18-23.

[10]    JCCF contends on appeal that the trial court erred in restricting its authority to employ attorneys and other third parties and in capping its annual fee at 1.5% of the Trust's assets per year.  The Attorney General argues that none of

JCCF's arguments are ripe for appellate review and that the trial court did not abuse its discretion in appointing JCCF trustee subject to limitations. Finally, JCCF argues in its reply brief that the Attorney General's arguments were not properly advanced in the trial court and are therefore waived for appellate review. We address the arguments presented in more or less reverse order.

# Discussion and Decision

## I. Whether the Attorney General's Arguments Are Waived

JCCF contends that the Attorney General's arguments are waived for appellate review. JCCF notes that the Attorney General did not object to the Petition and only became involved in the litigation following JCCF's motion to correct error. Under the circumstances of this case, we find the Attorney General's actions sufficient to preserve its arguments for appellate review. The purpose of the contemporaneous objection rule is to promote a fair trial by preventing a party from sitting idly by and appearing to assent to an offer of evidence or ruling by the court only to cry foul when the outcome goes against him. *Purifoy v. State*, 821 N.E.2d 409, 412 (Ind. Ct. App. 2005), *trans. denied* (citation omitted). That purpose would not be served in this case by application of the waiver rule.

We see no reason the Attorney General should have been required to object to the Petition, as it requested nothing that is inconsistent with the positions now taken by the Attorney General. The Petition itself only requests substitution of

JCCF for the Bank as trustee—which the Attorney General has never opposed—and mentions nothing regarding fees, payments to third parties, or using Trust principal for scholarships or expenses. Nor do we believe that the Attorney General should have been required to object to the trial court's order on the Petition, as it contained no provisions to which the Attorney objected. On the other hand, the Attorney General did oppose JCCF's motion to correct error, in which JCCF urged the trial court for the first time to enter rulings to which the Attorney General objected. Put another way, the Attorney General became involved at the precisely the point where it became clear that JCCF was taking a position in opposition to the Attorney General's position. We conclude that the Attorney General adequately preserved its arguments for appellate review.

## II.  Whether JCCF's Arguments Are Ripe

[13]    The Attorney General contends that JCCF's arguments are not ripe because there is no evidence that JCCF will ever need more than 1.5% of the Trust assets per year or engage the services of third parties in order to adequately administer it. "Ripeness relates to the degree to which the defined issues in a case are based on actual facts rather than on abstract possibilities, and are capable of being adjudicated on an adequately developed record." *Ind. Dep't of Envtl. Mgmt. v. Chem. Waste Mgmt., Inc.*, 643 N.E.2d 331, 336 (Ind. 1994). "BLACK'S LAW DICTIONARY defines ripeness as the 'circumstance existing when a case has reached, but has not passed, the point when the facts have developed sufficiently to permit an intelligent and useful decision to be

made.'" *Estate of Hagerman v. Ind. Dep't of State Revenue*, 771 N.E.2d 120, 128 (Ind. T.C. 2002) (quoting BLACK'S LAW DICTIONARY 1328 (7th ed. 1999)).

[14]     We agree with JCCF that its claims are ripe. JCCF's fee for serving as trustee moving forward has been capped at 1.5% and JCCF must obtain court permission before engaging the services of most third parties. JCCF's decision-making as trustee will be affected by the limit, even if it does not go to the trial court seeking more money. Also, as things stand, before considering engaging the services of a third party, JCCF must weigh whether it is worth the additional trouble and expense of petitioning the trial court for permission to do so. We consider these restrictions to be more than abstract possibilities when viewed from JCCF's perspective. We conclude that the facts of this case have developed sufficiently to permit an intelligent and useful decision.

## III. Whether the Trial Court Abused its Discretion in Imposing Restrictions on JCCF

[15]     JCCF contends that the restrictions placed on its administration of the Trust are contrary to the express language of the Trust and the Indiana Trust Code. The Attorney General counters that the restrictions, even those that alter the terms of the Trust, are within the trial court's equitable power over the administration of trusts.

> In Indiana, probate courts possess general equity powers. *Powell v. North* (1859), 3 Ind. 392. Those powers include the authority to supervise and control the administration of trusts. *See State ex rel. Anderson-Madison County Hospital Development Corp. v. Superior Court of Madison County* (1964), 245 Ind. 371, 199 N.E.2d 88;

> *Messner v. DeMotte* (1948), 119 Ind. App. 273, 82 N.E.2d 900,
> *trans. denied; Hulet v. Crawfordsville Trust Co.* (1946), 117 Ind. App.
> 125, 69 N.E.2d 823; *Newlin v. Newlin* (1944), 114 Ind. App. 574,
> 52 N.E.2d 503, *trans. denied.* The Indiana Trust Code does not
> pretend to limit the equity power of probate courts except as it
> specifically provides. *See* IND. CODE 30-4-3-30.

*Matter of Trust of Loeb*, 492 N.E.2d 40, 43 (Ind. Ct. App. 1986).

[16] Indiana Code section 30-4-3-24.4 specifically provides for the modification of a trust if it will further the purposes of the trust:

> (a) The court may modify the administrative or dispositive terms of a trust if, because of circumstances not anticipated by the settlor, modification or termination will further the purposes of the trust. To the extent practicable, the modification must be made in accordance with the settlor's probable intention.
>
> (b) The court may modify the administrative terms of a trust or terminate the trust if:
>> (1) the purpose of the trust has been fulfilled; or
>>
>> (2) continuation of the trust on the trust's existing terms would:
>>> (A) be illegal, impossible, impracticable, or wasteful; or
>>>
>>> (B) impair the trust's administration.

So, the question is not whether the trial court's restrictions violated or altered the terms of the Trust, but whether those restrictions were within its equitable power to administer the Trust.

## A. Limiting Trustee Fee to 1.5% of Trust Assets

[17] The Trust is silent on the question of trustee compensation. Indiana Code section 30-4-5-16(a) provides that, as a general rule, "the trustee is entitled to

reasonable compensation from the trust estate for acting as trustee." The trial court specifically found that the total fees received by the Bank and JCCF had been unreasonably high at approximately 2.7% of the trust assets (or 64% of the amount distributed to beneficiaries) and then imposed the 1.5% limitation. Under the circumstances of this case, we conclude that the record supports the trial court's decision regarding trustee fees.

[18] JCCF's own evidence supports a conclusion that a 1.5% fee is reasonable. At the hearing on June 3, 2013, Richards testified that 1.5% was the fee JCCF was seeking as trustee. (Tr. 16). Although Richards testified on October 23, 2014, that JCCF now wanted an annual fee of 2% of trust assets, she admitted on cross-examination that (1) she was unaware of any justification for the additional 0.5%, (2) 2% is "just the policy that we have[,]" and (3) requesting additional funds from the trial court, if needed, might be workable. Tr. p. 62. It is also worth noting that 1.5% is a "soft" cap, with the trial court's order allowing for the payment of funds beyond that if JCCF can justify it. JCCF provided ample evidence from which the trial court could conclude that 1.5% of trust assets was a reasonable yearly fee.

[19] Limiting JCCF's fee also seems justified by changing circumstances, which threaten to prevent the Trust from effectively fulfilling its purpose. In 2001, the Trust distributed $139,000.00 to students. This number has steadily declined since then, and by 2014 the distribution had shrunk to $41,000.00. In March of 2013, Trust assets totaled $1,292,662.65, 2% of which would be almost $26,000.00, or approximately 63% of the 2014 distribution to beneficiaries. The

obvious purpose of the Trust is to award scholarships to students in dietetics, nursing, and industrial arts, a purpose that would not be well-served if fees exceeded distributions to beneficiaries, a circumstance that seems a distinct possibility in the relatively near future, and even more likely if JCCF is able to charge a higher fee. We conclude that the trial court did not abuse its discretion in pushing JCCF to find ways to streamline administration of the Trust.

## B. Payments to Third Parties

[20] As previously mentioned, the language creating the Trust grants the trustee the power to "employ such attorneys, auditors, accountants, or other assistants, as are, in the judgment of the Trustee, necessary, and to pay their compensation from the Trust Property." Appellant's App. p. 42. It is undisputed that the trial court modified this, ruling that JCCF must seek prior authorization for third-party services that were not covered by its 1.5% fee, with the exception of brokerage fees and tax preparation fees. Both parties seem to agree that this issue primarily concerns the question of future attorney's fees. The award of trustee's attorney's fees is "'in the exercise of a sound discretion, and in the absence of an affirmative showing of error or abuse of discretion we must affirm [the trial court's] order.'" *Malachowski v. Bank One, Indpls., N.A.*, 682 N.E.2d 530, 533 (Ind. 1997) (quoting *Zaring v. Zaring,* 219 Ind. 514, 523, 39 N.E.2d 734, 737 (1942)).

[21] In addition to the reasons justifying the fee limitation, JCCF was unable to identify any specific anticipated need for legal representation, with Richards noting that it was a possibility but that "I'm not sure what to tell you those

expenses will be." Tr. p. 68. It should also be noted that, as with the soft cap on fees, the trial court's order specifically provided for Trust funds to be made available for third-party services should JCCF establish a need. Given the absence of evidence of any specific need for the services of a third-party attorney, we cannot say that the trial court abused its discretion in this regard.

# Conclusion

[22] We conclude that the Attorney General properly preserved its issue for appellate review. We further conclude that JCCF's arguments are ripe for appellate consideration. Finally, we conclude that the trial court did not abuse its discretion in imposing certain restrictions on JCCF's administration of the Trust. Consequently, we affirm the judgment of the trial court in all respects.

[23] The judgment of the trial court is affirmed.

Vaidik, C.J., and Kirsch, J., concur.