

FILED
Feb 01 2016, 8:25 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS

Peter H. Pogue
Kayla J. Goodfellow
Schultz & Pogue, LLP
Indianapolis, Indiana

Karl L. Mulvaney
Jessica Whelan
Bingham Greenbaum Doll LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEES

Mary A. Findling
Findling Park Conyers & Woody,
P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kevin T. Scripture, M.D., Richard Mangan, O.D., Judy D. Risch, O.D., and Whitewater Eye Centers, LLC, <br><br> *Appellants-Defendants,* <br><br> v. <br><br> Julia and Steven Roberts, <br><br> *Appellees-Plaintiffs* | February 1, 2016 <br><br> Court of Appeals Case No. 49A02-1504-CT-211 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Gary L. Miller <br><br> Trial Court Cause No. 49D03-1404-CT-13910 |

**Vaidik, Chief Judge.**

# Case Summary

[1] A unanimous medical review panel found that the defendant Doctors failed to comply with the appropriate standard of care and their conduct was a factor of the resultant damages to Julia Roberts. The Robertses filed first a complaint and then a motion for summary judgment against the Doctors, designating as evidence the opinion of the medical review panel. In their response, the Doctors designated as expert evidence only their own conclusory affidavits. Months later and the day before the hearing on the Robertses' summary-judgment motion, the Doctors filed a motion for leave to supplement their response to the summary judgment motion, designating only their own "supplemental" affidavits, in which they supplemented their original affidavits with facts to support their conclusions. Following the hearing, the trial court granted the Robertses' motion for summary judgment and denied the Doctors' motion to supplement. We find that the Doctors' own affidavits failed to raise a genuine issue of material fact sufficient to defeat summary judgment because the affidavits did not explain the standard of care and include facts showing how the Doctors met that standard. We also find that the trial court did not abuse its discretion in denying the Doctors' motion to supplement. We therefore affirm.

# Facts and Procedural History

[2] After Julia Roberts suffered an injury to her left eye requiring a corneal transplant, she and her husband Steven submitted their case to a medical-review

panel. In March 2014, the panel unanimously found that the doctors—Kevin T. Scripture, M.D., Richard Mangan, O.D., and Judy Risch, O.D., in particular—"failed to comply with the appropriate standard of care and that their conduct was a factor of the resultant damages." Appellants' App. p. 20-24. In April 2014, Julia and Steven Roberts filed their complaint for damages, which reads in part as follows:

4. In March 2010, plaintiff, Julia Roberts, was under the care and treatment of all the defendants. The defendants were negligent in their care and treatment of Julia Roberts.

5. As a direct and proximate result of the defendants' carelessness and negligence, plaintiff, Julia Roberts, suffered a permanent injury to the cornea of her left eye, requiring a corneal transplant.

6. As a direct and proximate result of the defendants' carelessness and negligence, the plaintiff, Julia Roberts, has incurred medical expenses and has lost wages. She has also experienced extreme pain and suffering, mental anguish, emotional distress, and permanent injury.

*Id*. at 12-13.

[3] The Doctors filed an answer denying all material allegations in the complaint. Thereafter, in October 2014, the Robertses filed a motion for summary judgment, in which the Robertses relied on the opinion of the medical-review panel on the issues of breach in the standard of care and causation. In early November 2014, the Doctors filed a response to the Robertses' summary-

judgment motion, designating as medical-expert testimony only their own affidavits—one from each of the Doctors. In these affidavits, as seen in this excerpt from the affidavit of Kevin Scripture, M.D., the Doctors set forth their medical credentials and then state the following concerning their care of Julia Roberts:

> 5. With regard to this matter, I provided care to Julia Roberts on March 14, 2010.
>
> 6. I am familiar with the treatment provided by Richard Mangan, O.D., Judy Risch, O.D., and Whitewater Eye Centers, LLC to Ms. Roberts.
>
> 7. I am familiar with the standard of care to be exercised by a treating ophthalmologist[1] under the same or similar circumstances in 2010.
>
> 8. The care and treatment I provided Ms. Roberts met the applicable standard of care and was not a responsible cause of her alleged injuries and/or damages.

*Id.* at 65-66. These portions of all three of the Doctors' affidavits are virtually identical, aside from the dates of treatment—Dr. Scripture states that he provided treatment on March 14, whereas Dr. Mangan and Dr. Risch state that they provided treatment from approximately March 15, 2010 through March 24, 2010—and of course the substitution of Doctor's names in Paragraph 6. *See*

---

[1] In the affidavits of Dr. Mangan and Dr. Risch, this reads "optometrist," rather than ophthalmologist. *See* Appellants' App. p. 68, 70.

*id.* at 65-70.  Approximately one week later, the Robertses filed a reply to the Doctors' response.

[4] The trial court set a date for the hearing on the motion for summary judgment. The day before the hearing, the Doctors filed a motion for leave to supplement their response to the summary-judgment motion and designated three supplemental affidavits, which included additional facts.  For instance, Dr. Scripture's affidavit now included the following information:

> 6.  Julia Roberts presented with pain in her left eye.  I instructed Ms. Roberts to continue the use of her previously-prescribed Zymar, and I replaced her bandage contact lens.
>
> * * * * *
>
> 10.  Richard Mangan, O.D. and Judy Risch, O.D. treated Julia Roberts for a left corneal ulcer from approximately March 15, 2010 through March 23, 2010.  During that time, they carefully evaluated her, ordered a culture, instructed her on care, and treated her symptoms with Zymar, Lortab, artificial tears, Ung ointment, Neopolydex ointment, Homatrophine 5%, Ciloxan ointment, Tobramycin, Pred Forte, Acuvail, and Tylenol #3.

*Id.* at 86.

[5] Following the hearing, the trial court issued an order summarily denying the Doctors' motion for leave to supplement their response and granting the Robertses' motion for summary judgment, finding that the Doctors' affidavits were "insufficient to raise or create specific facts that establish a material issue of fact for trial[.]"  *Id.* at 8.

The trial court certified the order granting the Robertses' motion for summary judgment. *See id*. at 10. The Doctors now appeal from the trial court's order.

# Discussion and Decision

The Doctors raise two issues on appeal. First, they argue that the trial court committed reversible error in granting the Robertses' motion for summary judgment because the Doctors claim their affidavits are sufficient to raise a genuine issue of material fact. Second, the Doctors contend that the trial court committed an abuse of discretion in denying the Doctors' motion to supplement their response to the Robertses' motion for summary judgment.

## 1. The Factual Content of the Doctors' Affidavits

Initially we note that the issue is not whether a doctor charged with malpractice can defeat a motion for summary judgment by filing a self-serving affidavit claiming he did not violate the standard of care.[2] Although the Robertses

---

[2] We leave for another day the issue of whether a defendant doctor's own affidavit standing alone is sufficient to defeat summary judgment. In dicta, we seemed to imply in *Perry v. Anonymous Physician 1*, 25 N.E.3d 103, 107 (Ind. Ct. App. 2014), that a medical professional's designated expert testimony must be the testimony of another physician. *See also Simms v. Schweikher*, 651 N.E.2d 348, 351 (Ind. Ct. App. 1995) (Barteau, J., dissenting) ("I question whether a self-serving affidavit by the defendant, and an affidavit by a surgical technician amount to qualified 'expert' testimony sufficient to require Simms to come forward with expert medical testimony of her own."). The Doctors cite to several cases in support of their argument that their own affidavits qualify as expert testimony and are sufficient to defeat a motion for summary judgment, even when no other evidence is designated as support. *See* Appellants' Br. p. 7-10 (discussing *Morton v. Moss*, 694 N.E.2d 1148 (Ind. Ct. App. 1998); *Simms*, 651 N.E.2d 348; *Whyde v. Czarkowski*, 659 N.E.2d 625 (Ind. Ct. App. 1995); *Summit Bank v. Panos*, 570 N.E.2d 960 (Ind. Ct. App. 1991)). But all of these cases are distinguishable for one of two reasons: either the defendant doctor's affidavit was not the sole testimony, or the plaintiff patients—and not the defendant doctors themselves—designated portions of the defendant's deposition to survive summary judgment.

mention this argument in their appellate brief and briefly in a footnote objecting to the motion to certify the interlocutory appeal, they make no argument on this issue and rest their case on their inadequacy of the factual content of the Doctors' affidavits. We do the same.

[9] Accordingly, the issue presented for our review is whether the particular facts alleged in the Doctors' affidavits were specific enough to raise a genuine issue of material fact. Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Perry v. Anonymous Physician 1*, 25 N.E.3d 103, 105-06 (Ind. Ct. App. 2014). The burden is on the moving party to prove the nonexistence of a genuine issue of material fact; if there is any doubt, the motion should be resolved in favor of the party opposing the motion. *Perry*, 25 N.E.3d at 106. Once the movant has sustained this burden, however, the opponent may not rest on the mere allegations or denials in his pleadings, but must respond by setting forth specific facts showing there is a genuine issue for trial. *Id*. In a medical malpractice action based on negligence the plaintiff must establish 1) a duty on the part of the defendant in relation to the plaintiff; 2) failure on the part of defendant to conform its conduct to the requisite standard of care required by the relationship; and 3) an injury to the plaintiff resulting from that failure. *Id*. It is well-settled that when a unanimous medical review panel opinion is designated as evidence by one party on summary judgment, the non-moving party must present expert testimony to rebut the medical review panel's opinion. *See Mills v. Berrios*, 851 N.E.2d 1066, 1070 (Ind. Ct.

App. 2006) (citing *Bunch v. Tiwari*, 711 N.E.2d 844, 850 (Ind. Ct. App. 1999)). If the non-movant fails to provide sufficient expert testimony, summary judgment should be granted in favor of the party seeking summary judgment. *Id*.

[10] In support of their motion for summary judgment, the Robertses submitted the opinion of the medical review panel, which determined unanimously that the Doctors failed to comply with the appropriate standard of care and that their conduct was a factor of the resultant damages. *See* Appellants' App. p. 20, 33. That satisfied the Robertses' burden to show there was no genuine issue of material fact; it was then up to the Doctors to designate sufficient expert testimony setting forth specific facts showing the existence of a genuine issue for trial. *See Mills*, 851 N.E.2d at 1070.

[11] Indiana Trial Rule 56(E) provides in pertinent part as follows:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party *may not rest upon the mere allegations or denials of his pleading*, but his response, by affidavits or as otherwise provided in this rule, *must set forth specific facts showing that there is a genuine issue for trial*.

(Emphases added). Here the Doctors' affidavits set forth their education and credentials, stated the dates on which they provided care to Julia Roberts, and then stated that they were familiar with the treatment provided by the other Doctors, that they were familiar with the standard of care to be exercised by a treating ophthalmologist or optometrist under the same or similar

circumstances in 2010, and that the care and treatment each Provider provided met the applicable standard of care and was not a responsible cause of her alleged injuries and/or damages. *See* Appellants' App. p. 65-70. The affidavits did not set forth specific *facts* regarding Julia Roberts' care, but instead, echoed the denials of their pleading contrary to the requirements of Trial Rule 56(E). *See* T.R. 56(E); *see also Whitlock v. Steel Dynamics, Inc.*, 35 N.E.3d 265, 273 (Ind. Ct. App. 2015) ("[T]he affiants—rather than merely setting forth conclusory statements—were required to give specific details which they perceived to be the basis for their conclusions . . . .").

[12]  A review of cases that analyze the specificity required to defeat summary judgment reveals affidavits that include facts about the care provided to the patient. For example, in *Mills*, 851 N.E.2d 1066, this Court considered whether the affidavit of plaintiff patient's medical expert was legally sufficient to defeat summary judgment where the patient's medical records were not attached or designated as evidence. Noteworthy for our purposes is the content of the expert's affidavit in that case. First the doctor sets forth his qualifications and states that he has personal knowledge of the standard of care applicable under the facts and circumstances of that case. *See id*. at 1071. The affidavit then goes on to provide a factual basis for the doctor's conclusions:

> [The doctor] states that he reviewed the OrthoIndy and
> Methodist Hospital records pertaining to Mills's surgery and
> subsequent care, as well as the July 31, 2000 photograph of her
> heel. He then sets forth the relevant facts found in these records
> and renders his expert opinion. Dr. Pohnert opines that "[t]he
> appearance and location of the wound are consistent with failure

to comply with the standard of care to properly pad and protect [Mills]'s heel during cast application, and such failure resulted in the heel ulcer, which could have been prevented if the standard of care had been observed."

*Id.*

[13] In *Bunch v. Tiwari*, 711 N.E.2d 844 (Ind. Ct. App. 1999), we considered the legal sufficiency of an expert affidavit designated to refute the medical-review panel's opinion on the issue of proximate cause. The expert affidavit designated by the plaintiff in that case stated that the patient "suffers from pain compatible with a nerve root injury which can occur with spinal puncture or an injection of spinal anesthetic." *Id.* at 851. The expert then went on to factually support his conclusion regarding proximate cause:

> [I]f Mr. Bunch was pain-free in his right leg prior to the spinal anesthetic and came out of surgery with immediate pain in his right leg and a dysesthic type of pain, then this pain was likely related to and caused by the spinal puncture or injection of spinal anesthetic.

*Id.*

[14] In *Oelling v. Rao*, 593 N.E.2d 189 (Ind. 1992), on which the Robertses particularly rely, the Indiana Supreme Court affirmed the trial court's grant of summary judgment in favor of the defendant doctors, finding that the designated affidavit submitted by the non-movant patients' expert was inadequate because it failed to set forth the applicable standard of care and a statement that the treatment in question fell below the applicable standard.

"Dr. Meister's affidavit states only that *he* would have treated Mr. Oelling differently, not that Dr. Rao's treatment fell below the applicable standard." *Id.* at 190-91. Also in *Oelling*, the Supreme Court explicitly noted that once the movant has sustained his burden, the non-movant may not rest upon the mere allegations or denials in his pleadings, but must respond by setting forth specific facts showing that there is a genuine issue for trial. *See id.* at 190 (citing T.R. 56(E)).

[15] And finally, we address the case of *Jones v. Minick*, 697 N.E.2d 496 (Ind. Ct. App. 1998), in which this Court considered whether the plaintiffs had designated sufficient expert medical evidence to create a question of fact as to whether the doctor in that case breached the appropriate standard of care. In his affidavit, the plaintiff's expert stated that he personally examined the patient and the site of her injury ten days post-partum, and that in his professional opinion the procedure had been performed upon the patient in a manner which fell below the commonly accepted standard of care which should have been exercised by a family practitioner and caused damage, "including significant scarring," to the patient. *Id.* at 500. In that case, the expert's affidavit, though rather lacking in content, nonetheless contained at least some facts in support of the expert's conclusion that the doctor's conduct fell below the applicable standard of care. *See id.* Thus in the three cases discussed above in which the expert affidavits were considered sufficient to defeat summary judgment, the affidavits set forth some factual basis to support the experts' conclusions. And in the case of *Oelling*, the Court affirmed the grant of summary judgment in

favor of the movants after determining that the affidavit of the non-moving party's expert was insufficient.

[16] Yet the Doctors contend their affidavits *are* sufficient to defeat summary judgment under the Indiana Supreme Court's *Hughley* standard. *Hughley* involved a civil proceeding initiated by the State seeking forfeiture of the defendant's cash and car, which the State alleged were proceeds of, or meant to be used to facilitate, the defendant's dealing. *See Hughley v. State*, 15 N.E.3d 1000, 1002 (Ind. 2014). The defendant's affidavit recited his competence to testify and then stated in full that the currency seized during this arrest was not the proceeds of criminal activity nor was it intended to be used for anything other than legal activities, and the car was never used to transport controlled substances and was not the proceeds from any unlawful activity. *See id*. Our Supreme Court found that Hughley had designated facts with specificity sufficient to defeat summary judgment:

> [H]ere, Defendant did not merely rest on his "pleadings"—that is, the complaint, answer, or counter-, cross-, and third-party claims with answers or replies thereto. T.R. 7(A). Rather, he designated an affidavit—albeit a perfunctory and self-serving one—that specifically controverted the State's prima facie case, denying under oath that the cash or car were proceeds of or used in furtherance of drug crimes.

*Id*. at 1004. Thus, the Doctors argue, even if their affidavits are self-serving and conclusory, under *Hughley* they are still sufficient to defeat summary judgment.

[17] Unlike in *Hughley*, however, here the Doctors cited no facts that would support that they met the standard of care or that their conduct did not cause the Robertses' damages. The Doctors merely restated the denials in their pleadings. *Hughley* is inapposite. For the reasons set forth above, we find that the trial court did not err in finding that the Doctors' affidavits do not raise a genuine issue of material fact precluding summary judgment. *See* T.R. 56(E).

## 2. Doctors' Motion to Supplement

[18] Next, the Doctors argue that the trial court abused its discretion in denying their motion to supplement their response to the Robertses' motion for summary judgment. The admission of evidence is left to the sound discretion of the trial court, and we will not reverse that decision except for an abuse of that discretion. *Fort Wayne Lodge, LLC v. EBH Corp.*, 805 N.E.2d 876, 882 (Ind. Ct. App. 2004). An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Id.*

[19] Here, the Doctors attempted to file supplemental affidavits eighty-one days after the Robertses' reply to the Doctors' response to the summary-judgment motion, and the day before the hearing on the Robertses' motion. These affidavits set forth facts of Roberts' care. Dr. Scripture's supplemental affidavit, for instance, now included the following factual information:

> 6. Julia Roberts presented with pain in her left eye. I instructed Ms. Roberts to continue the use of her previously-prescribed Zymar, and I replaced her bandage contact lens.

* * * * *

> 10. Richard Mangan, O.D. and Judy Risch, O.D. treated Julia Roberts for a left corneal ulcer from approximately March 15, 2010 through March 23, 2010. During that time, they carefully evaluated her, ordered a culture, instructed her on care, and treated her symptoms with Zymar, Lortab, artificial tears, Ung ointment, Neopolydex ointment, Homatrophine 5%, Ciloxan ointment, Tobramycin, Pred Forte, Acuvail, and Tylenol #3.

Appellants' App. p. 86.

[20] On appeal the Robertses contend that the Doctors have waived this issue because they only petitioned for certification of the grant of summary judgment, and not the denial of their motion to supplement their response. We find that the trial court's order on this issue is ambiguous, stating only that "the Court's order of February 4, 2015, granting Plaintiffs' motion for summary judgment is hereby certified for interlocutory appeal." *See* Appellants' App. p. 10. However, Indiana Appellate Rule 14(B) provides that an appeal may be taken from other interlocutory orders if the trial court certifies its order and the Court of Appeals accepts jurisdiction over the appeal. Thus we cannot say that the Doctors have waived this issue for appeal.

[21] But we also cannot say that the trial court abused its discretion in denying the Doctors' motion to supplement. Trial Rule 56(C) provides that a party opposing a motion for summary judgment has thirty days to serve a response or any other opposing affidavits. *Miller v. Yedlowski*, 916 N.E.2d 246, 250 (Ind. Ct. App. 2009), *trans. denied*. Here the Doctors timely filed the initial, factually

inadequate affidavits discussed above as designated evidence to their response to the Robertses' motion for summary judgment, but then waited months, until the day before the summary-judgment hearing, to step up their efforts to defeat the summary judgment by filing supplemental affidavits with "additional information which cured the alleged deficiencies in the Doctors' original affidavits, including further detail on the care provided by each Doctor and how that care met the applicable standard of care." Appellants' Br. p. 16. The trial court's denial was not against the logic and effect of the facts and circumstances before it. *See Fort Wayne Lodge, LLC*, 805 N.E.2d at 882.

[22] Affirmed.

Robb, J., and Pyle, J., concur.