## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 21 2017, 10:19 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEY FOR APPELLEES

Kirk R. Jocham
Jocham Law
Greenfield, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Edward E. Bell, M.D.,

*Appellant-Defendant,*

v.

Joan Barmore and Lew G. Barmore, Individually and as Husband and Wife,

*Appellees-Plaintiffs.*

November 21, 2017

Court of Appeals Case No.
22A01-1706-CT-1368

Appeal from the Floyd Superior Court

The Honorable Susan L. Orth, Judge

Trial Court Cause No.
22D01-1604-CT-601

**Bradford, Judge.**

# Case Summary

[1] On April 13, 2016, a unanimous medical malpractice review panel ("the medical review panel") found that Appellant-Defendant Edward E. Bell, M.D. ("Dr. Bell"), failed to comply with the appropriate standard of care and his conduct was a cause of the injuries and damages suffered by Appellee-Plaintiff Joan Barmore. After the medical review panel issued its decision, Joan and her husband, Appellee-Plaintiff Lew G. Barmore (collectively, "the Barmores") filed a complaint alleging that Dr. Bell had committed medical malpractice. The Barmores subsequently filed a motion for summary judgment. In granting the Barmores' motion for summary judgment, the trial court found that no genuine issues of material fact remained as to whether (1) Dr. Bell's treatment of Joan fell below the appropriate standard of care and (2) Dr. Bell's actions were a cause of the injuries and damages suffered by Joan.

[2] Dr. Bell appeals from the trial court's order granting summary judgment in favor of the Barmores. In doing so, Dr. Bell does not contest the trial court's award of summary judgment on the issue of whether his treatment of Joan fell below the appropriate standard of care. However, he contends that the trial court erred in determining that the Barmores were entitled to summary judgment on the issue of causation. Specifically, Dr. Bell asserts that the trial court erred in finding that the affidavit of George E. Quill, Jr., M.D. ("Dr. Quill"), was not sufficient to create a genuine issue of material fact as to causation. Because we disagree, we affirm the award of summary judgment in favor of the Barmores on the issue of causation.

# Facts and Procedural History

[3]    When Joan first visited Dr. Bell on November 14, 2011, Joan complained of pain in her left ankle. Joan continued to seek treatment from Dr. Bell for pain in her left knee and ankle until approximately October of 2012. During the course of her treatment by Dr. Bell, Joan underwent numerous tests and procedures. Eventually, Joan sought treatment for her continued left ankle and knee pain from a different doctor.

[4]    On July 21, 2014, the Barmores filed a proposed medical malpractice complaint against Dr. Bell with the Indiana Department of Insurance. On April 13, 2016, the appointed medical review panel unanimously determined that Dr. Bell "failed to comply with the appropriate standard of care." Appellant's App. Vol. II, p. 25. It also concluded that Dr. Bell's conduct "was a factor in the injuries and damages of which [the Barmores] complained." Appellant's App. Vol. II, p. 25.

[5]    After the medical review panel issued its findings, the Barmores filed their complaint alleging that Dr. Bell committed medical malpractice. On June 30, 2016, the Barmores filed a motion for summary judgment on the issues of liability and causation. The Barmores also filed a brief and designated evidence in support of their motion for summary judgment. Dr. Bell filed a response and designated materials in support thereof on August 29, 2016. The Barmores subsequently filed a reply to Dr. Bell's response to their summary judgment motion and Dr. Bell filed a request for findings of fact and conclusions thereon.

The trial court conducted a hearing on the Barmores' motion on September 7, 2016. Following this hearing, Dr. Bell filed a sur-reply and additional designated evidence. The parties filed their respective proposed findings on October 19, 2016.

On November 4, 2016, the trial court issued an order granting the Barmores' motion for summary judgment. In doing so, the trial court found that no issues of material fact remained as to whether (1) Dr. Bell's treatment of Joan fell below the appropriate standard of care and (2) Dr. Bell's actions were a cause of the Barmores' claimed injuries and damages. The trial court indicated that the case would proceed to trial on the issue of damages only. The trial court subsequently entered its summary judgment ruling as a final appealable order and this appeal follows.

# Discussion and Decision

## I. Relevant Authority

### A. Summary Judgement Standard of Review

"Summary judgment is appropriate only if 'there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law.'" *Oelling v. Rao*, 593 N.E.2d 189, 190 (Ind. 1992) (quoting Ind. Trial Rule 56(C)).

> The burden is on the moving party to prove the nonexistence of a genuine issue of material fact; if there is any doubt, the motion should be resolved in favor of the party opposing the motion.

> Once the movant has sustained this burden, however, the opponent may not rest upon the mere allegations or denials in his pleadings, but must respond by setting forth specific facts showing that there is a genuine issue for trial. T.R. 56(E).

*Id.* "At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion." *Simms v. Schweikher*, 651 N.E.2d 348, 349 (Ind. Ct. App. 1995) (citing T.R. 56(C)).

[9] "When reviewing an order granting summary judgment, an appellate court faces the same issues that were before the trial court and follows the same process." *Troxel Equip. Co. v. Limberlost Bancshares*, 833 N.E.2d 36, 40 (Ind. Ct. App. 2005), *trans. denied*. However, "[a] trial court's grant of summary judgment is clothed with a presumption of validity, and the party who lost in the trial court has the burden of demonstrating that the grant of summary judgment was erroneous." *Sony DADC U.S. Inc. v. Thompson*, 56 N.E.3d 1171, 1178 (Ind. Ct. App. 2016), *trans. denied sub nom. Sony DADC US, Inc. v. Thompson*, 60 N.E.3d 1039 (Ind. 2016) (citing *Troxel*, 833 N.E.2d at 40).

> Where a trial court enters specific findings and conclusions, they offer insight into the rationale for the trial court's judgment and facilitate appellate review, but are not binding upon this court. [*Troxel*, 833 N.E.2d at 40]. We will affirm upon any theory or basis supported by the designated materials. *Id.* When a trial court grants summary judgment, we carefully scrutinize that determination to ensure that a party was not improperly prevented from having his or her day in court. *Id.*

*Id*.

## B. Medical Malpractice Actions

In 1975, the Indiana Medical Malpractice Act was adopted by the General Assembly "in an effort to maintain the availability of healthcare services in Indiana … and to help control the costs of medical liability insurance, litigation, settlements, and excessive judgments against healthcare providers." *Mayhue v. Sparkman*, 653 N.E.2d 1384, 1386 (Ind. 1995).

> To prevail in a medical malpractice action, the plaintiff must prove three elements: "(1) a duty on the part of the defendant in relation to the plaintiff; (2) a failure to conform his conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff resulting from that failure." [*Oelling*, 593 N.E.2d at 190]. The physician has a duty to conform to the standard of care of a reasonably prudent physician in providing care to a patient. *Bowman v. Beghin*, 713 N.E.2d 913, 916 (Ind. Ct. App. 1999). More specifically, the physician is "required to possess and exercise that degree of skill and care ordinarily possessed and exercised by a reasonably careful, skillful and prudent practitioner in the same class to which he belongs treating such maladies under the same or similar circumstances." *McIntosh v. Cummins*, 759 N.E.2d 1180, 1184 (Ind. Ct. App. 2001), *trans. denied* (2002). Care that falls below the requisite standard establishes a breach of the physician's duty. *Bowman*, 713 N.E.2d at 916.

*Mills v. Berrios*, 851 N.E.2d 1066, 1070 (Ind. Ct. App. 2006).

A unanimous opinion of the medical review panel establishing that the doctor failed to comply with the appropriate standard of care and that the doctor's

conduct was a factor in causing the patients resultant damages is "ordinarily sufficient" to meet the patient's initial burden to show that there was no genuine issue of material fact. *See Siner v. Kindred Hosp. Ltd. P'ship*, 51 N.E.3d 1184, 1187-88 (Ind. 2016); *Scripture v. Roberts*, 51 N.E.3d 248, 252 (Ind. Ct. App. 2016). The burden then shifts to the doctor to designate sufficient expert testimony "setting forth specific facts showing the existence of a genuine issue" of material fact. *Scripture*, 51 N.E.3d at 252.

## II. Analysis

[12] With respect to Dr. Quill's tendered affidavit, the trial court found as follows:

> 46. In an apparent attempt to establish there is a material issue of fact as to Dr. Bell's negligence being a causative factor in Plaintiffs' injuries and damages, Dr. Bell provided this Court only with the affidavit of Dr. Quill.
> 47. Under *Perry*,[1] Dr. Quill's affidavit is insufficient, as he fails to state [that] he has reviewed the relevant medical records.
> 48. Furthermore, Dr. Quill's affidavit does not defeat summary judgment in Plaintiffs' favor on the issue of causation for Plaintiffs' injuries, rather it is only relevant to the amount of Plaintiffs' damages.
> 49. Injuries and damages are not synonymous, as they are different legal considerations.
>
> *****
>
> 52. A review of Dr. Quill's affidavit reveals it discusses only the amount of damages incurred by Plaintiffs and does not speak

---

[1] Prior to this point in the trial court's order, the trial court cites to both *Perry v. Anonymous Physician 1*, 25 N.E.3d 103 (Ind. Ct. App. 2014) and *Perry v. Driehorst*, 808 N.E.2d 765 (Ind. Ct. App. 2004), *trans. denied*, in its order. Although the trial court does not specify to which "*Perry*" decision it is referring in this finding, we believe the trial court was referring to our opinion in *Perry v. Driehorst*.

to whether Dr. Bell's actions caused Plaintiffs' injuries, such as was determined by the Medical Review Panel.

53.    In particular, Dr. Quill's affidavit states, "Damages from the care rendered by Dr. Bell are speculative," and, "even before [Joan] had her arthroscopic procedure in September 2012…she had significant and severe degenerative arthritis that probably would require eventual arthrodesis anyway." (underline added).

*****

55.    Nowhere in his affidavit, does Dr. Quill state it is his opinion [that] Dr. Bell's care did not cause Joan's arthrodesis; rather, what is implicitly stated in his vague affidavit is [that] it his opinion that the arthrodesis occurred sooner than it may otherwise have occurred due to Dr. Bell's care.

56.  Although Dr. Quill's affidavit and testimony may be appropriate at the damages stage of these proceedings, as he disagrees with the amount of Plaintiffs' damages, (i.e., his opinion as to how soon the arthrodesis would have eventually occurred), his affidavit does not rebut the Opinion of the Medical Review Panel that Dr. Bell's substandard [care] was a factor in Joan's injuries, including the ankle arthrodesis, of which Plaintiffs complained.

57.  Dr. Quill's affidavit does not create a material issue of fact as to whether or not Dr. Bell's care was a factor in the injuries of which Plaintiffs complained.

Appellant's App. Vol. III, pp. 50-51 (underlining in original, third set of bracketed material in original, all other bracketed material added).  We cannot agree with the trial court's conclusion that Dr. Quill's affidavit is insufficient to create an issue of material fact as to causation.

[13]    While the trial court correctly states that Dr. Quill's affidavit does not contain an explicit statement that he reviewed the specific medical records pertinent to this case, it is clear from his statements that he did so.  To find his affidavit

insufficient for failing to make the explicit statement that he reviewed the relevant medical records when it is clear that he did so would be to elevate form over substance, which we prefer not to do. *See generally Hoosier Health Sys., Inc. v. St. Francis Hosp. & Health Ctrs.*, 796 N.E.2d 383, 387 (Ind. Ct. App. 2003) (providing that "[w]here the purpose of a rule is satisfied, this Court will not elevate form over substance"); *Aldrich v. Coda*, 732 N.E.2d 243, 246 (Ind. Ct. App. 2000) (providing that while it would have been preferable if the doctor had stated in his affidavit that he was familiar with the applicable standard of care for podiatrists, it was evident from the content of the affidavit that the doctor, as an orthopedic surgeon, was indeed familiar with the applicable standard of care and, as a result, the affidavit was sufficient to establish a genuine issue of fact and preclude summary judgment).

[14] However, as to the question of causation, we again highlight the following finding by the trial court:

> 55.    Nowhere in his affidavit, does Dr. Quill state it is his opinion [that] Dr. Bell's care did not cause Joan's arthrodesis; rather, what is implicitly stated in his vague affidavit is [that] it his opinion that the arthrodesis occurred sooner than it may otherwise have occurred due to Dr. Bell's care.

Appellant's App. Vol. III, p. 51.

[15] Dr. Quill stated the following regarding causation in his affidavit:

> 1.    I am a board certified orthopaedic surgeon.
> 2.    I disagree with the opinion that subsequent damages resulted from the treatment rendered by Dr. Bell for Mrs.

Barmore at the arthroscopy performed for her left ankle on 09/21/2012.

3.	Damages from the care rendered by Dr. Bell are speculative, as polyarticular arthritis, the claimed result of Dr. Bell's treatment, was already present before his index arthroscopic procedure.

4.	Furthermore, Dr. Bell's notes all indicate that arthritis was the indication for all her office-based care, injections, and surgical care.

5.	The records would indicate that the patient underwent a subsequent left ankle arthrodesis by the podiatrists on 01/25/13 after irrigation and debridement of this ankle and completion of parenteral antibiotic therapy.

6.	All of the notes would indicate that, even before she had her arthroscopic procedure in September 2012, that she had significant and severe degenerative arthritis that probably would require eventual arthrodesis anyway.

Appellant's App. Vol. II, p. 100.

[16]	In reviewing Dr. Quill's affidavit, we agree with the trial court's determination that Dr. Quill did not explicitly make any statements that would give rise to a genuine issue of material fact as to causation. Dr. Quill's statements seem to refer to the amount of monetary damages that should be received by the Barmores as he believed that she would have probably required arthrodesis at some point in the future regardless of the care provided by Dr. Bell. As the trial court properly stated, Dr. Quill's affidavit can properly be considered during the still-to-come damages phase of trial.

# Conclusion

[17] Because we agree that Dr. Quill's affidavit did not raise a genuine issue of material fact a to the question of causation, we affirm the judgment of the trial court.

[18] The judgment of the trial court is affirmed.

May, J., and Barnes, J., concur.