

FILED

Jun 19 2023, 9:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Rodney L. Scott
John R. Hofmann
Waters Tyler Hofmann & Scott, LLC
New Albany, Indiana

ATTORNEYS FOR APPELLEE

D. Tysen Smith, II
Morgan & Morgan
Louisville, Kentucky

<u>Amicus Curiae</u>
Jerry Garau
Garau Germano, P.C.
Indiana Trial Lawyers
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Baptist Health Medical Group, Inc., | June 19, 2023 |
| *Appellant-Defendant,* | Court of Appeals Case No. 22A-CT-2585 |
| v. | |
| | Appeal from the Floyd Superior Court |
| Carla Wellman, Individually and as Surviving Spouse of David Wellman, Deceased, | The Honorable Maria D. Granger, Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 22D03-2108-CT-1055 |

**Opinion by Judge Riley**
Chief Judge Altice and Judge Pyle concur.

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Baptist Health Medical Group, Inc. (Baptist Health), appeals the trial court's partial summary judgment in favor of Appellee-Plaintiff, Carla Wellman, Individually and as Surviving Spouse of David Wellman, Deceased (Wellman), on Wellman's Complaint of medical malpractice arising from medical care provided by Baptist Health to David Wellman (David).[1]

We reverse and remand.

## ISSUE

Baptist Health presents this court with one issue on appeal, which we restate as: Whether the designated evidence regarding the physician's standard of care provided to David created a genuine issue of material fact precluding partial summary judgment.

## FACTS AND PROCEDURAL HISTORY

This is a malpractice action involving the August 2017 medical treatment of David by multiple providers employed by Baptist Health for a complex presentation of health issues, including weight-related cardiac problems, respiratory issues, heart disease, congestive heart failure, obstructive sleep apnea, hyperlipidemia, hypertension, morbid obesity, COPD, and diabetes.

---

[1] The Indiana Trial Lawyers Association appeared as *amicus* in support of Wellman.

Previously, in 2011, David had received a mitral valve replacement after contracting sepsis and pneumonia. Upon arrival at Baptist Health's emergency room on August 22, 2017, David was lethargic and unable to communicate. Due to respiratory failure, he was immediately placed on a ventilator. Multiple specialists employed by Baptist Health consulted on his care, including the emergency room physician, hospitalists, cardiologists, pulmonary, and infectious disease doctors. Srinivas Manchikalapudi, M.D. (Dr. Manchi)[2] consulted on David's cardiac issues due to the risk of endocarditis from the mechanical mitral valve.

[5] After David was admitted, Dr. Manchi performed a transesophageal echocardiogram (TEE) and noted that although it was a "technically difficult study," he did not believe evidence of vegetation or endocarditis was present. (Appellant's App. Vol. II, p. 65). Dr. Manchi prescribed continued medical therapy including antibiotics. David's condition improved in the days following the TEE. The ventilator was removed and a possible discharge from the hospital was discussed. However, David suffered a brain bleed and his anti-coagulant medication had to be reversed. He was subsequently transferred to the University of Louisville Hospital where physicians conducted further testing, including an additional TEE which indicated several lesions on the

---

[2] As the parties refer to Dr. Manchikalapudi by a shortened version of his name, we will do likewise.

mitral valve and which were believed to be thrombus rather than vegetation. David passed away while at the University of Louisville Hospital.

[6] On July 31, 2019, Wellman filed her second amended proposed complaint before the Indiana Department of Insurance, claiming that Baptist Health and its cardiologist, Dr. Manchi, had committed medical malpractice which resulted in David's death. The proposed complaint was evaluated by the three-person medical review panel which consisted of an emergency medicine doctor, an infectious disease physician, and a cardiologist. On June 3, 2021, the emergency medicine doctor and the infectious disease doctor found in favor of Baptist Health and Dr. Manchi on the standard of care and causation but noted that they could not "give an opinion as to the read[ing] of the TEE." (Appellant's App. Vol. II, pp. 31, 37). However, the cardiologist panel member, Dr. Jarrod Frizzell (Dr. Frizzell), concluded that Baptist Health and Dr. Manchi had "failed to meet the applicable standard of care as to the reading of the TEE." (Appellant's App. Vol. II, p. 34).

[7] On the basis of the medical review panel's opinion, on August 31, 2021, Wellman filed a Complaint against Baptist Health sounding in negligence regarding Dr. Manchi's cardiology care. On January 6, 2022, Wellman filed a partial motion for summary judgment with respect to the standard of care, along with a memorandum and designation of evidence, designating Dr. Frizzell's panel opinion and affidavit. On March 7, 2022, Baptist Health filed a response, a memorandum in opposition to Wellman's motion, and a designation of evidence. Baptist Health's designation included a three-page,

fifteen-paragraph affidavit from Dr. Manchi which detailed his treatment of David and his perceived compliance with the standard of care in performing and interpreting the TEE, deposition testimony of Dr. Frizzell, analyzing the basis for his opinion on the standard of care on reading a TEE, and certified medical records from the University of Louisville Hospital. On March 31, 2022, Wellman replied to Baptist Health's response.

[8] On September 6, 2022, after a hearing, the trial court granted Wellman's motion for partial summary judgment on the issue of the standard of care. Although the trial court in its judgment mentioned that the testimony of Dr. Frizzell and the University of Louisville Hospital records had been designated by Baptist Health, it did not further analyze this evidence. Ultimately, the trial court concluded that no genuine issue of material fact existed with respect to the reading of the TEE, and it granted partial summary judgment to Wellman on David's received standard of care, ruling that Dr. Manchi's affidavit alone was not sufficient to create an issue of material fact to rebut a unanimous medical review panel's opinion and that an opinion from an outside expert was required.

[9] On September 19, 2022, Baptist Health filed its motion to certify the interlocutory order for appeal, which was granted by the trial court on October 7, 2022. This court accepted the interlocutory appeal on December 5, 2022. Baptist Health now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[10] Initially, we note that the issue is not, as suggested by the parties and *amicus*, whether a defendant doctor's own affidavit standing alone is sufficient to defeat summary judgment. Although Baptist Health did designate Dr. Manchi's own affidavit claiming he did not violate the standard of care, this case does not solely rest on the adequacy of the factual content of his affidavit. Rather, in response to Wellman's motion for summary judgment, Baptist Health also designated the medical records from the University of Louisville Hospital and portions of Dr. Frizzell's deposition. Accordingly, the issue presented for our review is whether the totality of the designated evidence is sufficient to raise a genuine issue of material fact.

[11] When reviewing the grant or denial of summary judgment, we apply the same test as the trial court: summary judgment is appropriate only if the designated evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Sedam v. 2JR Pizza Enters., LLC,* 84 N.E.3d 1174, 1176 (Ind. 2017). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). The moving party bears the initial burden of showing the absence of any genuine issue of material fact as to a determinative issue. *Id.*

[12]     Our review is limited to those facts designated to the trial court, and we construe all facts and reasonable inferences drawn from those facts in favor of the non-moving party.  T.R. 56(H); *Meredith v. Pence*, 984 N.E.2d 1213, 1218 (Ind. 2013).  Because we review a summary judgment ruling *de novo*, a trial court's findings and conclusions offer insight into the rationale for the court's judgment and facilitate appellate review but are not binding on this court. *Denson v. Estate of Dillard*, 116 N.E.3d 535, 539 (Ind. Ct. App. 2018). Additionally, we are not constrained by the claims and arguments presented to the trial court, and we may affirm a summary judgment ruling on any theory supported by the designated evidence.  *Id.*

[13]     In support of her motion for summary judgment, Wellman submitted and designated the opinion of the medical review panel, in which Dr. Frizzell determined that Baptist Health and Dr. Manchi had failed to meet the applicable standard of care when reading the TEE.  In addition, in his affidavit—which was also designated by Wellman— Dr. Frizzell criticized the number of images taken during the TEE and averred that had "the interpretation [of the TEE] met the standard of care, [it] would have likely changed [David's] course in that he would have undergone timely studies and investigation to rule-in or rule-out infective endocarditis, more likely than not resulting in the diagnosis of endocarditis being ruled in and treated." (Appellant's App. Vol. II, pp. 39-40).  He further specified that "the failure to meet the applicable standard of care [] increased the risk of [David's] death from infective endocarditis and reduced his chance to survive."  (Appellant's

App. Vol. II, p. 40). This designation satisfied Wellman's *prima facie* burden to show there was no genuine issue of material fact; it was then up to Baptist Health and Dr. Manchi to designate sufficient expert testimony setting forth specific facts showing the existence of a genuine issue for trial. *See Scripture v. Roberts*, 51 N.E.3d 248, 252 (Ind. Ct. App. 2016) (Plaintiffs' introduction of medical review panel opinion in their favor "satisfied [their] burden to show there was no genuine issue of material fact[.]"); T.R. 56(E) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial").

[14]    In response to Wellman's motion for partial summary judgment, Baptist Health designated Dr. Manchi's affidavit which included extensive facts and detailed medical information, explaining his treatment and his perceived adherence to the standard of care in performing and interpreting the TEE. In addition, Baptist Health designated certified medical records from the University of Louisville Hospital, which bolstered Dr. Manchi's conclusions by noting that clots—and not vegetation—were present on the mitral valve and that endocarditis was never conclusively diagnosed, as well as the deposition testimony of Dr. Frizzell in which he conceded that the medical guidelines for the standard of care on which he based his opinion allow for variations in the ability to perform all aspects of a TEE depending on the individual patient's

characteristics, anatomic variations, pathologic features, time constraints, and the judgment of the treating physician.

[15] In *Chi Yun Ho v. Frye*, 880 N.E.2d 1192, 1195 (Ind. 2008), Frye brought a medical malpractice claim against Dr. Ho, a surgeon, for failure to remove all of the surgical sponges following abdominal surgery. In response to Frye's motion for summary judgment in which Frye designated the unanimous medical review panel's conclusion in his favor, Dr. Ho designated his own affidavit and the deposition testimony of another treating doctor, averring that Dr. Ho had complied with the standard of care. *Id.* The trial court denied Frye's summary judgment motion and both parties appealed various issues, including the denial of summary judgment. *Id.* On appeal, our supreme court considered "whether conflicting opinions [in medical malpractice cases] regarding whether a physician met the applicable standard of care, *in the absence of facts supporting such opinions*, operate to create a genuine issue of material fact precluding summary judgment." *Id.* at 1201 (emphasis added). Although Dr. Ho's designation was "extremely sparse in factual content," and did not set out in terms what the applicable standard of care was, but affirmed that the defendant had met it, our supreme court held that, together, the affidavit and deposition extract sufficed to preclude summary judgment in Frye's favor because they created a genuine issue of material fact. *Id.* at 1201. "Medical negligence is . . . not generally a conclusion that may be reached by a jury without . . . an expert opinion [as to the applicable standard of care] among the evidence presented. Such expert opinion takes on the character of an

evidentiary fact in medical malpractice cases." *Id*. In such cases, therefore, "an opinion on the ultimate fact of whether a defendant physician's conduct fell below the applicable standard of care may be seen as qualitatively different," from cases where mere "speculation, not evidence" is designated by a defendant in an attempt to furnish nonnegligent explanations for his conduct. *Id*.

[16] Indiana's jurisprudence has further elaborated that "[o]f course, [such conclusory] opinions would be greatly enhanced by detailing the factual circumstances upon which they were based. Numerous cases, however, have treated such detailing as affecting the weight and credibility to be given to the opinion [by the trier of fact] rather than its admissibility" and sufficiency to defeat a motion for summary judgment. *Jordan v. Deery*, 609 N.E.2d 1104, 1111 (Ind. 1993) ("reluctantly" reversing summary judgment); *see also Scripture*, 51 N.E.3d 252 (Defendant-Doctors' affidavits did not raise a genuine issue of material fact precluding summary judgment because the affidavits did not set forth specific facts regarding the patient's care, but instead, echoed the denials of their pleading and consisted of conclusory statements). Our supreme court has emphasized that the question on summary judgment is not whether the evidence would support a verdict in favor of the non-moving party, but whether "a conflict of evidence *may* exist" on a material issue. *Siner v. Kindred Hosp. Ltd. P'ship*, 51 N.E.3d 1184, 1189 (Ind. 2016) (original emphasis) (quoting *Purcell v. Old Nat'l Bank*, 972 N.E.2d 835, 841 (Ind. 2012)).

[17] *Chi Yun Ho* is to be further distinguished from cases in which an affiant physician affirmed merely that "*he* would have treated [the patient] differently,

not that [defendant physician]'s treatment fell below the applicable standard [of care]." *Oelling v. Rao*, 593 N.E.2d 189, 190-91 (Ind. 1992) (emphasis in original). Such a designation is insufficient as a matter of law to preclude summary judgment because it does not address the applicable legal standard: whether the patient's treatment fell below the applicable standard of care. *Id*. Thus, "[t]o refute the defendants' evidence, the affidavit needed to set out the applicable standard of care and a statement that the treatment in question fell below that standard." *Id*. at 190.

[18] Here, resolving, as we must, all reasonable inferences and all ambiguities in Baptist Health's favor, we conclude that a fair reading of Dr. Manchi's affidavit, together with the University of Louisville Hospital records and Dr. Frizzell's deposition testimony, created a genuine issue of material fact that precluded the entry of summary judgment. Whereas Dr. Frizzell's medical review panel's conclusion of breach of standard of care and his subsequent affidavit criticizing Dr. Manchi's interpretation and reading of the TEE was *prima facie* sufficient to support Wellman's motion for summary judgment, in response thereto Dr. Manchi's affidavit averred an explicit factual basis to support his standard of medical care provided, course of treatment, opinions, and conclusions. Dr. Manchi's affidavit commenced with the introduction of his education and credentials, recognizing that he had "been practicing in clinical cardiology in Indiana for over twenty years and ha[d] performed hundreds of TEEs in [his] career, and perform[ed] over fifty every year." (Appellant's App. Vol. II, p. 64). Maintaining that he is "familiar with the standard of care applicable to

cardiologists," Dr. Manchi asserted that his "interpretation of and report on [David's] TEE complied with the applicable standard of care." (Appellant's App. Vol. II, p. 64). In his explanation of the standard of care, Dr. Manchi elaborated that "the standard of care allows for variation in the number of images obtained and duration of the exam depending on the clinical circumstances with the patient." (Appellant's App. Vol. II, pp. 64-65). While a probe is inserted into the patient and a number of images are recorded during the procedure, Dr. Manchi asserted to be able to see more than merely those recorded images as the "TEE is a continuous imaging process." (Appellant's App. Vol. II, p. 64). Through this process, Dr. Manchi was able to visualize "the prosthetic mitral valve to determine whether there [was] evidence of vegetation." (Appellant's App. Vol. II, pp. 64-65). The affidavit explained in detail the difficulty of the study as David "was on a monitor" and "morbidly obese per BMI[,]" and as a result the "number of images [was limited] to 18[.]" (Appellant's App. Vol. II, p. 65). Based on his "adequate and desirable visualization of the prosthetic mitral valve," Dr. Manchi concluded there was an absence of vegetation or structural abnormalities. (Appellant's App. Vol. II, p. 65). Dr. Manchi further noted that David's subsequent improvement supported the accuracy of his reading of the TEE.

[19] In addition to Dr. Manchi's affidavit, Baptist Health designated the University of Louisville Hospital's medical records for David. While further testing and an additional TEE were conducted, these results indicated that "given the sequence of events, the mitral valve lesions are most likely thrombotic."

(Appellant's App. Vol. II, p. 68). The University of Louisville Hospital's physicians noted that "[w]hile off anticoagulation, the [mitral valve replacement] thrombosis rate/risk will continue to grow and causing [sic] flash pulmonary edema;" there was no diagnosis of endocarditis. (Appellant's App. Vol. II, p. 75). Also, Dr. Frizzell's deposition, which was designated in support of Baptist Health's position, appeared to signal Dr. Frizzell's concession that the standard of care allowed for certain variations depending on individual patient characteristics, anatomic variations, pathologic features, time constraints, and the judgment of the treating physician.

[20] In sum, Dr. Manchi's affidavit, which detailed the standard of care, the procedure and its difficulties, and the resulting conclusion drawn from the procedure, together with the testing results at the University of Louisville Hospital and Dr. Frizzell's deposition, were sufficient to create a genuine fact issue requiring resolution by the trier of fact.

[21] Nevertheless, in an effort to encourage this court to disregard Dr. Manchi's affidavit, Wellman characterizes the affidavit as "self-serving." (Appellant's Br. p. 21). Despite this characterization, we find that Dr. Manchi's affidavit comports with the Indiana Supreme Court's *Hughley* standard. *Hughley* involved a civil proceeding initiated by the State seeking forfeiture of the defendant's cash and car, which the State alleged were proceeds of, or meant to be used to facilitate, the defendant's drug dealing. *See Hughley*, 15 N.E.3d at 1002. The defendant's affidavit recited his competence to testify and then stated in full that the currency seized during this arrest was not the proceeds of

criminal activity nor was it intended to be used for anything other than legal activities, and the car was never used to transport controlled substances and was not the proceeds from any unlawful activity. *See id.* Our supreme court found that Hughley had designated facts with specificity sufficient to defeat summary judgment:

> [H]ere, Defendant did not merely rest on his "pleadings"—that is, the complaint, answer, or counter-, cross-, and third-party claims with answers or replies thereto. T.R. 7(A). Rather, he designated an affidavit—albeit a perfunctory and self-serving one—that specifically controverted the State's prima facie case, denying under oath that the cash or car were proceeds of or used in furtherance of drug crimes.

*Id*. at 1004. Likewise, here, Dr. Manchi submitted a three-page, fifteen paragraph affidavit, in which he detailed, under oath, the extensive facts and medical information, explained the treatment and procedure, and his method in interpreting the TEE. Accordingly, Dr. Manchi's affidavit, combined with the University of Louisville Hospital's medical records and Dr. Frizzell's deposition, included sufficient specificity to controvert Wellman's *prima facie* case and precluded the entry of summary judgment.

## CONCLUSION

[22] Based on the foregoing, we conclude that Baptist Health's designated evidence created a genuine issue of material fact as to whether Dr. Manchi's treatment of David complied with the standard of care to preclude the entry of summary judgment in favor of Wellman.

Reversed and remanded for further proceedings.

Altice, C. J. and Pyle, J. concur