**The INDIANA DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, and Kathy Prosser in Her Official Capacity as Commissioner of the Indiana Department of Environmental Management, Appellants,**

v.

**CHEMICAL WASTE MANAGEMENT, INC., Appellee.**

and

**The City of New Haven, Indiana, Intervenor.**

**No. 49S00–9310–CV–1143.**

Supreme Court of Indiana.

Dec. 1, 1994.

---

Pamela Carter, Atty. Gen., Arend J. Abel, Sp. Counsel for Legal Policy, Lisa A. McCoy, Leslie H. Williams, Deputy Attys. Gen., Office of the Atty. Gen., Indianapolis, for appellants.

George Plews, Sue A. Shadley, Peter M. Racher, Jeffrey D. Claflin, Plews & Shadley, Indianapolis, for appellee.

## ON DIRECT APPEAL

DeBRULER, Justice.

This case comes to us on direct appeal from the trial court judgment finding Indiana Code 13-7-10.2, the "Good Character" law ("Statute"), unconstitutional. Ind.Appellate Rule 4(A)(8). Appellants Indiana Department of Environmental Management ("IDEM") and Kathy Prosser, Commissioner of the Indiana Department of Environmental Management ("Commissioner"), raise the following issues:

1) whether the case is sufficiently developed to permit judicial review, i.e., "ripe";

2) whether the Statute unconstitutionally distinguishes between commercial and non-commercial waste disposal facilities;

3) whether the statutory standards for either approving or denying a permit are impermissibly vague;

4) whether due process of law requires that Appellee be provided a hearing prior to the Commissioner's decision;

5) whether the lack of a rules promulgation requirement to implement the Statute creates a constitutional problem;

6) whether the Statute impermissibly impairs contractual obligations or amounts to an *ex post facto* law;

7) whether the Statute unlawfully restrains the freedom of association or expression;

8) whether the Statute is an impermissible delegation of authority;

9) whether the Statute violates Article I, § 25 of the Indiana Constitution;

10) whether the Statute is an unlawful exercise of the police power;

11) whether the entire statutory scheme must be invalidated if any part is found to be invalid.

## Facts

Appellee Chemical Waste Management of Indiana, Inc. ("Chemwaste") is the owner and operator of the Adams Center Waste Treatment and Disposal Facility ("the Facility") located in Allen County near Fort Wayne, Indiana. The Facility is the only commercially operated enterprise in Indiana that treats and disposes of hazardous waste. It has operated since 1975 and is one of fewer than 20 such facilities in the United States.

Chemwaste is a wholly-owned subsidiary of Chemical Waste Management, Inc., a New York Stock Exchange company with assets of over $1.6 billion. Chemical Waste Management, Inc. is 76–percent owned by Waste Management, Inc., another New York Stock Exchange company, with assets of more than $10.5 billion. Waste Management, Inc., the largest waste handling and disposal company in the world, operates over 200 disposal facilities in 48 states and 20 foreign countries.

IDEM is an agency of the State of Indiana responsible for, *inter alia*, the regulation of and the issuing of permits for all landfills within the state. The Commissioner approves or denies applications for the issuance of permits for treating, storing, and disposing of hazardous waste.

In 1976, the United States Congress passed the Resource Conservation and Recovery Act, 42 U.S.C. 6901, *et seq.* ("RCRA"). Subtitle "C" of RCRA and its implementing regulations establish requirements relating to the generation, transportation, treatment, storage and disposal of hazardous waste. The Facility is designed to satisfy or exceed all RCRA requirements. Under RCRA, the United States Environmental Protection Agency may authorize states to adopt regulations to enforce their own hazardous waste programs instead of Subtitle C. On January 31, 1986, the EPA authorized the State of Indiana to promulgate its own rules governing hazardous waste. Indiana, through IDEM, now has the authority to approve or deny hazardous waste permits.[1]

The Indiana General Assembly enacted the Statute on March 20, 1990. It requires each applicant for the issuance, renewal, transfer or major modification of a solid or hazardous waste permit, and each "responsible party," to file a disclosure statement with IDEM providing, generally, a description of all civil, criminal, and administrative complaints alleging a violation of an environmental law, convictions for environmental crimes, or convictions for crimes of moral turpitude within the five years before the date of submitting the permit application. Ind.Code § 13–7–10.2–3 (Burns 1990). "Responsible party" includes the applicant's officers, directors, senior management officials, and any person or entity who owns, directly or indirectly, 20 percent or more of the permit applicant. Ind.Code § 13–7–10.2–2 (Burns 1990).

Under the Statute the Commissioner is allowed to deny a permit application if any responsible party of the applicant has entered into a settlement and paid a fine or penalty of more than $10,000 to resolve a complaint. Ind.Code § 13–7–10.2–3 (Burns 1990). This is true even if the alleged violation is never proven, the applicant or responsible party has denied any wrong-doing, the alleged violation did not threaten public health or the environment, and the settlement is entered solely for the purpose of settling a disputed claim. The Commissioner also can deny a permit based upon any viola-

---

**1.** Justice Kennedy of the United States Supreme Court recently observed:

> As solid waste output continues apace and landfill capacity becomes more costly and scarce, state and local governments are expending significant resources to develop trash control systems that are efficient, lawful, and protective of the environment. The difficulty of their task is evident from the number of recent cases that we have heard involving waste transfer and treatment. *See Philadel-*

*phia v. New Jersey,* 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978); *Chemical Waste Management, Inc. v. Hunt,* 504 U.S. 334, 112 S.Ct. 2009, 119 L.Ed.2d 121 (1992); *Oregon Waste Systems, Inc. v. Department of Environmental Quality of Oregon,* 511 U.S. ——, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994).
> *C & A Carbone, Inc. v. Town of Clarkstown, N.Y.,* —— U.S. ——, ——, 114 S.Ct. 1677, 1680, 128 L.Ed.2d 399, 405 (1994) (some internal citations omitted).

tion of an Indiana environmental statute or rule, even where IDEM earlier concluded that the violation did not warrant suspending or revoking the applicant's existing Indiana waste management permit. The Commissioner receives broad powers to grant or deny permits even where it is unclear that there exist any rational means for reaching a decision.

When the Statute became law in 1990, Chemwaste had on file a 1987 permit application for a substantial modification of the Facility. On July 12, 1990, the Commissioner notified Chemwaste that she intended to apply the Statute to the 1987 major modification application, in spite of the fact that the application had been filed more than two years earlier and even though the Statute did not indicate that it applied to pending applications. Chemwaste successfully litigated that case. *Indiana Department of Environmental Management v. Chemical Waste Management of Indiana, Inc.* (1992), Ind. App., 604 N.E.2d 1199, *trans. denied.*

■ On January 6, 1992, Chemwaste filed this suit challenging the constitutionality of the Statute in addition to its retroactive application. Chemwaste obtained a temporary restraining order pending entry of a preliminary injunction, which prevented IDEM from issuing a denial of Chemwaste's 1987 major modification permit application relying in any way on the Statute. On March 2, 1992, IDEM filed a motion to dismiss, claiming that Chemwaste had failed to exhaust its administrative remedies. The trial court held a hearing on Chemwaste's motion for preliminary injunction and IDEM's motion to dismiss, and, on March 25, 1992, entered its Findings of Fact, Conclusions of Law and Order granting the preliminary injunction and denying IDEM's motion. On April 8, 1992, IDEM filed a praecipe in order to appeal the trial court's decision.[2]

## I

Appellants claim that this case is not sufficiently developed to merit judicial review, i.e. it lacks "ripeness." The trial court found that the issues were sufficiently ripe.

■ Ripeness relates to the degree to which the defined issues in a case are based on actual facts rather than on abstract possibilities, and are capable of being adjudicated on an adequately developed record. Since the Commissioner has not even begun the decision-making process regarding Chemwaste's application, IDEM asserts that there exists nothing for a court to review. IDEM claims that since Chemwaste has neither been denied a permit nor had an opportunity to exhaust administrative remedies, judicial intervention is unwarranted. IDEM goes on to say that the trial court's "as applied" analysis depended on hypothetical harms and that such an approach does not support the serious act of striking down a law passed by the Indiana General Assembly.

Chemwaste argues that its action for declaratory judgment is the appropriate means for resolving its dispute with IDEM. The Commissioner had made known her intended application of the Statute. This case may be viewed as nothing more than a complicated modern version of an action for a writ of *quo warranto,* demanding that the Commissioner show the source of her authority to act in such a manner. *See* 3 WILLIAM BLACKSTONE, COMMENTARIES, page 262, ch. 17, ¶ 5 (Edward Christian ed., Dublin, P. Byrne, Grafton Street 1796) (1768). In addition, the trial court found that completing the entire permit application process before pursuing the constitutional challenge would impose an undue burden on Chemwaste.

■ The Indiana Constitution lacks the well known "cases" and "controversies" language of Art. III, § 2 [3] of the U.S. Constitu-

---

2. The standard of review in this case is not *de novo;* it is even less deferential. Since statutes are presumed to be constitutional, if there are any grounds for reversing the trial court's judgment we will do so. *See Matter of Tina T.* (1991), Ind., 579 N.E.2d 48, 56 ("Legislation ... is clothed in a presumption of constitutionality.")

3. "The judicial power shall extend to all cases, in law and equity, arising under this constitution, the laws of the United States, and treaties made, or which shall be made, under their authority;—to all cases affecting ambassadors, other public ministers and consuls;—to all cases of admiralty and maritime jurisdiction;—to controversies to which the United States shall be a party;—to

tion. This Court can and does issue decisions which are, for all practical purposes, "advisory" opinions.[4] However, it is also true that the separation of powers language in Art. III, § 1[5] fulfills an analogous function in our own judicial activity, or lack thereof. While this Court respects the separation of powers, we do not permit excessive formalism to prevent necessary judicial involvement. Where an actual controversy exists we will not shirk our duty to resolve it. "Courts of justice are established to try questions pertaining to the rights of individuals. An action is the form of a suit given by law for the recovery of that which is one's due, or a legal demand of one's right." *Brewington v. Lowe* (1848), 1 Ind. 21, 23. If Chemwaste has a right to have IDEM consider a permit application in a particular manner, we cannot avoid considering the claim. However, since it remains unclear what sort of rules the Solid Waste Management Board may promulgate and how that board will decide appeals from the Commissioner's denial of permit applications, we remain unpersuaded that this case is in fact ready for our review, and so hold. We will comment on the other issues solely to provide clarification as the Commissioner attempts to apply the Statute.

## II

Chemwaste claims that the Statute irrationally discriminates against commercial waste disposal facilities, i.e., that the distinction between non-commercial and commercial waste disposal facilities lacks a lawful basis. *See* Ind.Code § 13–7–10.2–1 (Burns Supp. 1993).

The trial court found this distinction irrational and invalidated the Statute on grounds of equal protection of laws, citing the Equal

Protection Clause of the Fourteenth Amendment of the U.S. Constitution[6] and the Equal Privileges Clause of Art. I, § 23 of the Indiana Constitution. It found that the classification was irrational and that the Statute impermissibly burdened the fundamental right to reputation.

The threshold question for federal equal protection analysis concerns the level of scrutiny. Those laws which involve a suspect classification, like race or alienage, and those that burden the exercise of fundamental rights, like reproduction or expression, receive the strictest scrutiny. In order to survive strict scrutiny a state action must be a necessary means to a compelling governmental purpose and be narrowly tailored to that purpose. Statutes rarely survive this level of scrutiny. *But see Korematsu v. United States,* 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944). "Intermediate" level scrutiny requires an important governmental objective to justify certain classifications, e.g., gender. Ordinary government activities must only satisfy a rational basis test, which requires merely that the law be "rationally related to a legitimate governmental purpose." *Clark v. Jeter,* 486 U.S. 456, 461, 108 S.Ct. 1910, 1914, 100 L.Ed.2d 465, 471 (1988). Statutes rarely fail this test.

The trial court applied strict scrutiny because the denial of a permit damages a corporation's reputation and reputation is a fundamental interest in this State.[7] The trial court found no compelling governmental interest in distinguishing between non-commercial and commercial waste facilities.

IDEM urges the lowest level of scrutiny because the classification is unrelated to rep-

controversies between two or more states;—between a state and citizens of another state; ...."

**4.** The most common example of this type of opinion occurs when we respond to a certified question from a federal district court. *See e.g. Baker v. Westinghouse Elec. Corp.* (1994), Ind., 637 N.E.2d 1271.

**5.** "The powers of the Government are divided into three separate departments; the Legislative, the Executive including the Administrative, and the Judicial; and no person, charged with official duties under one of these departments, shall

exercise any of the functions of another, except as in this Constitution expressly provided."

**6.** "No state shall ... deny to any person within its jurisdiction the equal protection of the laws."

**7.** "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have a remedy by due course of law. Justice shall be administered freely, and without purchase, completely, and without denial; speedily, and without delay." IND. CONST. art. I, § 12.

utation, i.e., the classification does not burden the (alleged) fundamental right to reputation in any way. IDEM claims that the fact that non-commercial facilities have an incentive to produce less waste initially and their certainty as to the contents of the waste being processed; neither of which applies to commercial waste disposal enterprises, provide a rational basis for the distinction. IDEM also claims that differences in the reporting requirements of the two types of facilities justify the differing treatment. *See* 329 IAC 3.1.

We find no burdening of a fundamental right nor any suspect classification. The General Assembly has decided to concentrate the State's energies on regulating commercial waste disposal facilities and it is not our job to second guess such decisions. Rational basis is the standard and, based upon the view of the Statute provided by this case, it is satisfied.

■■■■ Art. I, § 23 of the Indiana Constitution states, "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens." This Equal Privileges clause was intended to minimize the risk of misuse of legislative power to the benefit of some citizens. Statutes granting unequal privileges or immunities will not violate Section 23 if the disparate treatment is reasonably related to inherent characteristics which distinguish the unequally treated classes, and if the preferential treatment is uniformly and equally available to all persons similarly situated. *Collins v. Day* (1994), Ind., 644 N.E.2d 72. We employ a standard of review deferential to the legislature, and the challenger must "negative every conceivable basis which might have supported the classification." *Johnson v. St. Vincent Hospital, Inc.* (1980), 273 Ind. 374, 392, 404 N.E.2d 585, 597. The reasons presented by IDEM to justify the special statutory requirements for commercial facilities are reasonably related to inherent differences between commercial and non-commercial waste operations, including the lucrative motivation for the commercial operator to accept as much waste as possible and the commercial facilities' availability to handle public waste needs. Chemwaste does not contend that the grant of privilege or immunity is not equally applicable to and available for all non-commercial on-site operations. We find no violation of Section 23.

### III

■■■ The trial court found that the statutory standards governing approval or denial of permit applications are unconstitutionally vague.

■■■ Ordinarily a statute is unconstitutionally vague only if it does not make it clear what conduct is prohibited and/or required. A law must provide adequate notice of its import to those at whom it is directed. The Statute requires a disclosure statement describing each of the following:

(b)(3) A description of all civil and administrative complaints against the applicant or responsible party for the violation of any state or federal environmental protection law that:

(A) Have resulted in a fine or penalty of more than ten thousand dollars ($10,000) within five (5) years before the date of the submission of the application; or

(B) Allege an act or omission that constitutes a material violation of the state or federal environmental protection law and that presented a substantial endangerment to the public health or the environment.

(b)(4) A description of all pending criminal complaints alleging the violation of any state or federal environmental protection law that have been filed against the applicant or responsible party within five (5) years before the date of submission of the application.

(b)(5) A description of all judgments of criminal conviction entered against the applicant or responsible party within five (5) years before the date of submission of the application for the violation of any state or federal environmental protection law.

(b)(6) A description of all judgments of criminal conviction of a felony constituting a crime of moral turpitude under the laws of any state or the United States that are entered against the applicant or responsible party within five (5) years before the date of submission of the application.

Ind.Code § 13–7–10.2–3 (Burns 1990). In addition, before actually denying "an application for the issuance, renewal, transfer, or major modification of a permit" the Commissioner is required to consider nine "mitigating factors." Ind.Code § 13–7–10.2–4(b) (Burns 1990).

■ We find the above standards adequate to guide the Commissioner in the exercise of her statutory duties. However, contrary to what the Commissioner claimed in her testimony at trial, it is not permissible to deny a permit to an applicant while granting a permit to an identically situated applicant. Until the Commissioner actually acts on Chemwaste's application, and the Solid Waste Management Board considers the appeal (if any), we cannot evaluate the standards further.

### IV

Chemwaste claims, and the trial court found, that due process requires that it be provided a hearing prior to the ruling on its permit application.

The trial court relied on *Pennsylvania Bar Association v. Commonwealth*, 607 A.2d 850 (1992), where the court, construing the Pennsylvania constitutional section from which the Indiana Constitution acquired Art. I, § 12, found that before being denied reputational interests an attorney had to receive a hearing. We do not intend to disparage the importance of reputational interests. It is indisputable that one has an interest in maintaining a "good name." Without unnecessarily deciding the correct interpretation of our state constitutional provision, however, we think that it is clear that a natural person working as an attorney has a recognizably more significant interest in her reputation, and therefore more need of a pre-deprivation hearing, than a corporation that performs waste disposal. A post-deprivation hearing appears adequate to protect the reputational interests of a corporate entity engaged in a business where one's reputation is not an essential component of successfully functioning in that profession.

### V

The trial court determined that due process, equal protection, and the necessity of avoiding vagueness mandate the promulgation of rules in order to properly administer Ind.Code 13–7–10.2–7.

The Statute states, "The solid waste management board may adopt rules under IC 4–22–2 to administer [the 'Good Character' law]." Ind.Code 13–7–10.2–7 (Burns 1990). Chemwaste urges that the absence of rules denies applicants fair notice of the criteria by which it will be judged. IDEM responds that the standards are sufficient to guide the agency and that nothing more is required. Appellants and Chemwaste rely on the same case. *Mugg v. Stanton* (1983), Ind.App., 454 N.E.2d 867, 869, *reh'g denied.* Until *some* agency action is actually taken, it is difficult to determine the extent to which fairness mandates the promulgation of rules and we decline to attempt such a determination.

### VI

The trial court found that the Statute impairs contractual obligations and is an *ex post facto* law. These issues are easily resolved.

■ The Statute does not say anything about contractual rights at all, indicating that a facial attack is unlikely to succeed. Similarly, an "as applied" challenge is not possible since the Statute has yet to be applied to any (alleged) contract. If the Commissioner denies Chemwaste's permit application solely on the basis of past settlements that were not to be used for any other purpose, and the Solid Waste Management Board upholds the denial, then it may be *possible* to raise this issue. However, where an industry is highly regulated, like hazardous waste disposal, some impairment is treated as within the party's expectations. *See Energy Reserves Group v. Kansas Power & Light*, 459 U.S. 400, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983).

■ The *ex post facto* law argument is even weaker. If this clause did apply to non-criminal statutes then the contracts clause would be mere surplusage, an unacceptable result according to ordinary canons of interpretation. In any event, the U.S. Supreme

Court has already decided the issue and found that the prohibition of *ex post facto* laws applies only to statutes imposing or increasing criminal punishment. *Calder v. Bull*, 3 U.S. 386, 1 L.Ed. 648 (1798). The Statute lacks these constitutional defects.

## VII

The trial court found that the Statute impermissibly burdens the rights to free association and expression of applicants.

While we do not relax in the least our support for these fundamental freedoms, it is unclear how they are burdened by the Statute. Disassociation from an individual guilty of an environmental violation is only relevant as one of nine possible mitigating factors, i.e., it enables the Commissioner to grant a permit in the face of grounds for its denial. Certainly, it is important whether a waste disposal company has owners or operators that have previously committed environmental crimes or delicts.

Arguably, freedom of expression does possess a certain centrality to our jurisprudence. *Price v. State* (1993), Ind., 622 N.E.2d 954, *petition for rehearing pending.* However, with all due respect to the trial court and the Seventh Circuit Court of Appeals, we do not know how to apply the idea of "a First Amendment interest" in this case. *See Marrese v. American Academy of Orthopaedic Surgeons,* 706 F.2d 1488, 1494 (7th Cir.1983). Since we do not recognize significant expressive components as easily as the trial court does, we can live with our inadequacy. The Statute simply does not recognizably burden freedom of expression. Of course, its application might result in some interference, but that is not *yet* the issue.

## VIII

■ The trial court found that the Statute was an impermissible delegation of authority because it did not include standards sufficient to guide the agency in exercising its authority.

The trial court applied an exaggerated notion of sufficient standards. While we are not always comfortable with the broad discretion granted to administrative agencies, those battles were fought, and lost by those opposed to such grants, long ago. As this Court has written:

> Reasonable standards must be imposed where the Legislature delegates discretionary powers to an administrative officer. However, the policy of the Legislature and the standards to guide the administrative agency may be laid down in very broad and general terms. Such terms get precision from the knowledge and experience of men whose duty it is to administer the Statutes, and then such Statutes become reasonably certain guides in carrying out the will and intent of the Legislature.

*Alanel Corp. v. Indianapolis Redevelopment Commission* (1958), 239 Ind. 35, 43, 154 N.E.2d 515, 520 (quoting *Matthews v. State* (1958), 237 Ind. 677, 681, 148 N.E.2d 334, 336) (internal citations omitted). More recently we rejected a claim that a rule promulgated by an agency violated the separation of powers required by Art. III, § 1 of the Indiana Constitution. "The only limitation on the delegation of authority to administrative bodies is that reasonable standards must be established to guide the administrative body. The standards, however, only need to be [as] specific as the circumstances permit, considering the purpose to be accomplished by the statute." *Barco Beverage v. Alcoholic Beverage Commission* (1992), Ind., 595 N.E.2d 250, 254 (quoting *Taxpayers Lobby of Indiana, Inc. v. Orr* (1974), 262 Ind. 92, 103, 311 N.E.2d 814, 819).

The Statute informs the Commissioner of who may be denied a permit. In addition, it provides some discretion in granting permits when mitigating factors are present. This regulatory framework is far from perfect, but perfection has never been a requirement for administrative bodies.[8] Until further action is taken by IDEM, this framework seems adequate.

---

8. One source of the sort of conflicts apparent in this case is the differing paradigms motivating the various governmental actors. Administrative agency employees tend to see problems as matters for scientific expertise ("We are profession-

als."), agency heads as matters of politics ("The voters elected us to....."), and judges as matters of adjudicatory fairness ("What process is due?"). This trichotomy may enlighten the de-

## IX

The trial court found that where the Statute allows a permit to be denied based on enforcement actions in other states it violates Art. I, § 25 of the Indiana Constitution.[9]

The Statute permits the Commissioner to consider environmental violations committed in other jurisdictions in order to assess whether an applicant may be denied a permit to operate a waste disposal facility in Indiana. This provision of the state constitution is concerned with how laws take effect, not what factors may be considered in decision-making by other branches. It controls the legislative activity of the General Assembly, not the enforcement activity of the Executive. While the Statute does permit the Commissioner to consider enforcement actions performed in other jurisdictions, this is not significantly different from the habitual offender enhancement available in the sentencing statute which permits members of our judiciary to consider convictions from other jurisdictions when imposing sentences in Indiana. *See* Ind.Code § 35–50–2–8 (Burns 1994).

## X

The trial court, relying solely on the Indiana Constitution, specifically citing Art. I, § 1,[10] found the Statute to be an unlawful exercise of the police power because the Commissioner may deny Chemwaste's permit application even where Chemwaste has done nothing wrong.

Chemwaste correctly claims that the Statute permits denial of applications based on unsubstantiated charges. It also allows the denial of a permit application based on wrongdoing, or alleged wrongdoing, of any responsible party, i.e., anyone directly or indirectly owning more than 20% of a company. IDEM understandably wants to minimize the influence of environmental wrongdoers in the waste disposal business. In spite of the laudable motives of IDEM, the Commissioner, and the Indiana General Assembly, this portion of the Statute cannot be applied without violating the Indiana Constitution.

> The legislature may not under the guise of protecting public interests, arbitrarily interfere with private business or impose unnecessary restrictions upon lawful occupations. If the law prohibits that which is harmless in itself, or if it is unreasonable and purely arbitrary, requires that to be done which does not tend to promote the health, comfort, morality, safety or welfare of society, it is an unauthorized exercise of power.

*Department of Financial Institutions v. Holt* (1952), 231 Ind. 293, 302, 108 N.E.2d 629, 634. The Statute itself actually tried to avoid this error by mandating that "... a denial under this section may not be based solely upon pending complaints...." Ind.Code § 13–7–10.2–4 (Burns 1990). However, the Statute also explicitly permits the denial of a permit if the Commissioner finds that a civil, administrative, or criminal *complaint* has been *filed* against the applicant or responsible party. Ind.Code § 13–7–10.2–4 (Burns 1990). We construe the Statute in order to avoid an unconstitutional result and that requires that such complaints not be grounds for denial of a permit.

In order for the Commissioner to deny a permit application based on mere pending complaints, she must make a finding that the alleged environmental violation actually occurred and that none of the mitigating factors are present, or are present but inadequate to justify the issuance of a permit. This means that the following section of the Statute is void: "However, when the commissioner denies an application, the commissioner is not required to explain the extent to which any of the mitigating factors set forth

---

bate but it cannot resolve it. *See* CHRISTOPHER F. EDLEY, JR, ADMINISTRATIVE LAW (1990).

9. "No law shall be passed, the taking effect of which shall be made to depend upon any authority, except as provided in this Constitution."

10. "WE DECLARE, that all people are created equal; that they are endowed by their CREATOR with certain inalienable rights; that among these

are life, liberty, and the pursuit of happiness; that all power is inherent in the people; and that all free governments are, and of right ought to be, founded on their authority, and instituted for their peace, safety, and well-being. For the advancement of these ends, the people have, at all times, an indefeasible right to alter and reform their government."

in subsection (b) influenced the commissioner's determination to deny the application." Ind.Code § 13–7–10.2–4(c) (Burns 1990). In order to facilitate appeal to the Solid Waste Management Board and, if necessary, judicial review, administrative agencies must account for their discretionary decisions.[11]

## XI

The trial court found that, in spite of the express severance provision, the whole Statute was beyond salvaging and must be invalidated.

As should be obvious from the preceding opinion the problematic sections of the Statute are in fact severable. While our deferential scrutiny might seem to undermine the discretion of administrative bodies, it does not. The requirements we impose are designed to better facilitate the workings of administrative agencies so that judicial intervention will be rare. Given the inclusion of a clause prohibiting permit denial based solely on pending complaints, we are convinced that the General Assembly would have adopted this regulatory scheme even without its constitutionally defective provisions. *See Indiana Education Employment Relations Board v. Benton Community School Corp.* (1977), 266 Ind. 491, 365 N.E.2d 752, *reh'g denied.*

### Conclusion

The difficulties in this area of regulatory activity are substantial. Indiana has made a serious attempt to address them and we do not intend to unnecessarily interfere in these essential efforts. However, care must be taken that these attempts do not undermine essential procedural fairness. Accordingly, we reverse in part and affirm in part the trial court, and remand for further consistent proceedings.

SHEPARD, C.J., and GIVAN, DICKSON and SULLIVAN, JJ., concur.

11. Since the Commissioner stated at trial her intention to issue written findings on the use of mitigating factors even when the Statute does not so require, we assume that this is not unacceptably burdensome to the administrative process.