

I N T H E

# Indiana Supreme Court

Supreme Court Case No. 22S-CT-381

## Hoosier Contractors, LLC,

*Appellant/Cross-Appellee,*



**FILED**

Jul 19 2023, 10:08 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

–v–

## Sean Gardner,

*Appellee/Cross-Appellant.*

Argued: January 26, 2023 | Decided: July 19, 2023

Interlocutory Appeal from the Hamilton Superior Court
29D02-1602-CT-1262
The Honorable Jonathan M. Brown, Judge

On Petition to Transfer from the Indiana Court of Appeals
21A-CT-1331

**Opinion by Justice Slaughter**

Justices Massa and Molter concur.
Justice Goff concurs in the judgment with separate opinion in which
Chief Justice Rush joins.

**Slaughter, Justice.**

Sean Gardner asked Hoosier Contractors, LLC, to inspect the roof of his home. But before Hoosier did the inspection, it made Gardner sign a contract for Hoosier to perform any needed work. Despite their contract, Gardner refused to let Hoosier repair his roof. Hoosier sued for breach of contract, prompting Gardner to file a counterclaim in which he alleged that (1) the contract contained many violations of the Indiana Home Improvement Contractors Act and (2) these violations were deceptive acts under the Indiana Deceptive Consumer Sales Act. Gardner made these allegations on behalf of a class of Hoosier's similarly situated customers. Gardner alleged further that his reliance on these deceptive acts entitled him and the class members to statutory damages. We hold that Gardner did not prove he sustained any injury that would afford him standing to pursue his counterclaim. We affirm in part, reverse in part, and remand.

I

A

In December 2015, Gardner contacted Hoosier Contractors to request a roof inspection and obtain an estimate for roof repairs at his Indianapolis home. Two Hoosier representatives visited his home and, before agreeing to inspect the roof, required Gardner to sign a contract entitled "Replacement Work Agreement". This contract required Gardner to hire Hoosier to perform any needed repairs. The contract provided that, if Gardner's insurer would not pay for the repairs, it would be "null and void". And the contract included a liquidated-damages clause providing for damages amounting to 20 percent of the contract price in case of breach. Gardner signed the contract; Hoosier inspected the roof; and Gardner submitted the claim to his insurer, Cincinnati Insurance, to cover the proposed repairs.

Cincinnati approved the claim and issued a "Scope of Work" document to Hoosier and Gardner. The document itemized the work Hoosier was to perform and the cost for each item, with the estimated total bill exceeding $50,000. Gardner questioned whether some of the repairs were necessary, and he hired Spartan Claims, LLC, to work with

Cincinnati to adjust the claim. Spartan and Cincinnati ultimately produced an updated Scope of Work document, totaling nearly $60,000. Although Hoosier tried to schedule the repairs, Gardner did not allow Hoosier to complete them. Instead, Gardner hired a different company, Caliber Construction, to do the requested repairs for about $18,000.

B

Hoosier filed a breach-of-contract claim against Gardner, who responded by filing a counterclaim on behalf of a class alleging Hoosier's form contract violated the Home Improvement Contractors Act, Ind. Code ch. 24-5-11. Gardner also alleged that Hoosier used these violations as part of a "scheme, artifice, or device" to mislead Indiana residents into signing home-improvement contracts, which constituted "incurable deceptive acts" actionable under the Indiana Deceptive Consumer Sales Act, *id*. ch. 24-5-0.5. Gardner claimed that he and the other class members "relied upon [the] deceptive acts perpetrated by Hoosier" and "suffered damages as a result".

Hoosier moved for summary judgment on the counterclaim, which the trial court denied. It found that "Hoosier's contract appear[ed] to contain at least two *prima facie* violations of HICA's requirements": failure to list a price for the agreed home improvements (as required by Indiana Code section 24-5-11-10(a)(8)), and failure to describe the agreed work (as required by subsection 10(a)(4)).

Gardner then moved to certify his proposed class, which the trial court granted, defining the class as: "All persons who entered into a Home Improvement Contract with Hoosier Contractors, LLC from February 12, 2014 until such time that Hoosier stopped utilizing said Contract(s) and began utilizing a Home Improvement Contract that was in compliance with the Indiana Home Improvement Contractors Act."

Hoosier later filed a second summary-judgment motion, alleging Gardner and some of the class members lack standing under subsection 4(a) because they did not suffer an actual injury. Hoosier attached deposition testimony and supporting affidavits to its motion. Hoosier's president, Joshua White, attested that Hoosier never performed the

agreed-upon repairs, and Gardner's deposition testimony proved he had hired another company to do the repairs for around $18,000—a fraction of Hoosier's contract price. Gardner opposed this motion, claiming that class members' injury from the deceptive contract was their reliance on it: "As people relying on Hoosier's incurable deceptive acts, all members of the class that signed Hoosier's HICA-noncompliant contract suffered an injury that yields statutory damages through Indiana Code 24-5-0.5-4." Gardner attached documents to his summary-judgment response brief, including his affidavit and portions of his deposition. Gardner averred he "told Hoosier that [he] would not be working with them due to what [he] believed to be their dishonest business practices." Gardner's deposition testimony was the same evidence cited by Hoosier and explained that he had hired a different company to complete his roof repairs.

Gardner also sought approval of a class-action notice, as well as a motion for partial summary judgment, arguing the contract was null and void and the liquidated-damages clause was an unenforceable penalty. The trial court issued three separate, non-final orders denying each party's summary-judgment motion and amending the class-action notice. The trial court certified the three orders for interlocutory appeal, and the court of appeals accepted jurisdiction. On the merits, the appellate court affirmed the denial of the summary-judgment motions and the order concerning the class-action notice. *Hoosier Contractors, LLC v. Gardner*, 190 N.E.3d 359 (Ind. Ct. App. 2022). Both parties then sought transfer, which we granted, 197 N.E.3d 829 (Ind. 2022), thus vacating the appellate opinion, Ind. Appellate Rule 58(A).

## II

The trial court ruled on three separate motions below: (1) it denied Hoosier's motion for summary judgment, which argued (among other things) that Gardner and some class members lacked standing; (2) it denied Gardner's motion for partial summary judgment, which argued that the contract was null and void and its liquidated-damages clause was unenforceable; and (3) it issued an order amending Gardner's class-action notice and denying Hoosier's motion to decertify the class. The aggrieved parties appealed each of these three orders. We hold that Gardner, on

behalf of himself and as class representative, lacked standing to bring his counterclaim against Hoosier—a disposition that moots the class-action issues—and we summarily affirm sections 3 and 4 of the court of appeals' opinion, 190 N.E.3d at 370–72, which affirmed the denial of Gardner's motion for partial summary judgment as to Hoosier's breach-of-contract claim. App. R. 58(A)(2).

## A

"The threshold issue of standing determines whether a litigant is entitled to have a court decide the substantive issues of a dispute." *Solarize Ind., Inc. v. S. Ind. Gas & Elec. Co.*, 182 N.E.3d 212, 216 (Ind. 2022). The standing requirement "mandates that courts act in real cases, and eschew action when called upon to engage only in abstract speculation." *Pence v. State*, 652 N.E.2d 486, 488 (Ind. 1995). Whether a party has standing is a legal question we review de novo. *City of Gary v. Nicholson*, 190 N.E.3d 349, 351 (Ind. 2022) (citing *Holcomb v. Bray*, 187 N.E.3d 1268, 1275 (Ind. 2022)).

## 1

Indiana's constitution imposes structural limits on the exercise of judicial power. Although our constitution lacks the "case or controversy" requirement found in Article III of the United States Constitution, our separation-of-powers clause, Ind. Const. art. 3, § 1, "fulfills a similar function." *Pence*, 652 N.E.2d at 488 (citing *Ind. Dep't of Env't Mgmt. v. Chemical Waste Mgmt., Inc.*, 643 N.E.2d 331, 336–37 (Ind. 1994)). Standing is a "significant restraint on the ability of Indiana courts to act, as it denies the courts any jurisdiction absent an actual injured party participating in the case." *Ibid.* Indiana law is clear that standing requires an injury, *Nicholson*, 190 N.E.3d at 351, which is met if the party shows it "ha[s] suffered or [is] in immediate danger of suffering a direct injury as a result of the complained-of conduct." *Solarize*, 182 N.E.3d at 217 (quoting *Bd. of Comm'rs of Union Cnty. v. McGuinness*, 80 N.E.3d 164, 168 (Ind. 2017)).

Because standing under the Indiana Constitution is jurisdictional, it must exist at all stages of litigation—not merely at the outset. In *Solarize*, for example, we dismissed one of the parties for lack of standing, although no one had objected to that party's standing at any prior stage of the

litigation before other tribunals. *Solarize*, 182 N.E.3d at 216. It follows that a party must likewise establish standing at each stage of litigation **within** a given tribunal. It is not enough, in other words, for a claimant to establish injury in its pleadings; it must do so at each successive stage of the litigation. Standing, after all, is and remains an essential element of a claimant's case: "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Parties asserting a counterclaim must likewise comport with these standing requirements. See *Madison Cnty. Bd. of Comm'rs v. Town of Ingalls*, 905 N.E.2d 1022, 1025–26 (Ind. Ct. App. 2009) (dismissing counterclaim for lack of standing), trans. denied.

At the pleading stage, a claimant's general factual allegations of injury arising from the defendant's conduct may suffice to satisfy standing. For example, "[m]otions to dismiss for lack of standing may be brought under Trial Rule 12(B)(6) for failure to state a claim on which relief can be granted." *Thomas v. Blackford Cnty. Area Bd. of Zoning Appeals*, 907 N.E.2d 988, 990 (Ind. 2009) (citing *Huffman v. Ind. Office of Env't Adjudication*, 811 N.E.2d 806, 813 (Ind. 2004)). When evaluating a Rule 12(B)(6) motion, reviewing courts take the alleged facts to be true, consider the allegations in the light most favorable to the non-movant, and draw every reasonable inference in that party's favor. *Collins Asset Grp., LLC v. Alialy*, 139 N.E.3d 712, 714 (Ind. 2020) (citing *Bellwether Props., LLC v. Duke Energy Ind., Inc.*, 87 N.E.3d 462, 466 (Ind. 2017) (cleaned up)).

But such general factual allegations do not suffice at the summary-judgment stage. Under Indiana's prevailing summary-judgment standard, the "initial burden is on the summary-judgment movant to 'demonstrate[] the absence of any genuine issue of fact as to a determinative issue,' at which point the burden shifts to the non-movant to 'come forward with contrary evidence' showing an issue for the trier of fact." *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014) (brackets in original) (quoting *Williams v. Tharp*, 914 N.E.2d 756, 761–62 (Ind. 2009)). The non-movant cannot "rest upon the mere allegations or denials of his pleading" but must "set forth" by affidavit or other evidence "specific facts", Ind. Trial Rule 56(E), that

for summary-judgment purposes will be taken as true. *Scripture v. Roberts*, 51 N.E.3d 248, 254 (Ind. Ct. App. 2016) (non-movant's restatement of denial in pleadings and failure to raise specific facts were insufficient to raise genuine factual issue precluding summary judgment under *Hughley*).

2

Hoosier's summary-judgment motion proved the absence of a genuine factual dispute on a determinative issue—that Gardner suffered no injury. Hoosier attached deposition testimony and supporting affidavits showing that it never performed the agreed-upon repairs, and that Gardner hired another company to do the repairs for a fraction of the price. Once Hoosier made this showing, the burden shifted to Gardner to set forth specific evidence creating an issue of fact that he was injured by Hoosier's deceptive acts. See *Hughley*, 15 N.E.3d at 1003 (describing summary-judgment burden shifting).

For Gardner to show injury under the deceptive consumer sales act, he needed to show that he relied to his detriment on a deceptive act by Hoosier: "A person relying upon an uncured or incurable deceptive act may bring an action for the **damages actually suffered** as a consumer as a result of the deceptive act or five hundred dollars ($500), whichever is greater." I.C. § 24-5-0.5-4(a) (emphasis added). We have previously explained that "[a] prerequisite for obtaining damages [under this statute] is that the claimant **relied** on the deception." *Rainbow Realty Grp., Inc. v. Carter*, 131 N.E.3d 168, 178 (Ind. 2019) (emphasis added). Consumers who relied on a deceptive act may bring an action "for the damages actually suffered . . . as a result". I.C. § 24-5-0.5-4(a). A claimant's "damages actually suffered" is defined as "[a]n amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses." *Actual Damages*, Black's Law Dictionary (11th ed. 2019). Relevant here, subsection 4(b), which governs class actions, requires the named class representative—Gardner—to be "damaged" by the deceptive act:

> Any person who is entitled to bring an action under
> subsection (a) on the person's own behalf against a supplier
> for damages for a deceptive act may bring a class action

> against such supplier on behalf of any class of persons of
> which that person is a member and **which has been
> damaged by such deceptive act**.

I.C. § 24-5-0.5-4(b) (emphasis added). Thus, the Act requires that every class member must suffer damages derived from actual injuries.

Elsewhere, the Act confirms that the consumer must suffer an actual injury due to his reliance on a deceptive act. Subsection 2(a)(6) says that an "'offer to cure' as applied to a deceptive act" must be "reasonably calculated to **remedy a loss claimed by the consumer**". I.C. § 24-5-0.5-2(a)(6)(A) (emphasis added). Such "loss" presumes that the consumer must suffer actual damages to sue under subsection 4(a). There can be no "loss" without actual damages arising from an actual injury. Thus, the Act requires consumers to rely on the deceptive act and suffer injury as a result—known as detrimental reliance: "Reliance by one party on the acts or representations of another, causing a worsening of the first party's position." *Detrimental Reliance*, Black's Law Dictionary (11th ed. 2019).

Courts interpreting analogous federal consumer-protection statutes likewise hold that a separate injury, apart from the procedural violation, is required to maintain an action. In *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016), Robins, a consumer, tried to maintain an action against Spokeo, Inc. under the Fair Credit Reporting Act of 1970, 15 U.S.C. § 1681 et seq. *Id.* at 333. The Act allows consumers to sue consumer-reporting agencies for statutory damages if they willfully violated any requirement of the Act, including maintaining false information on a consumer. *Id.* at 335. Robins learned that Spokeo made an inaccurate credit report about him, and he sued on his own behalf and on behalf of all similarly situated persons alleging that inaccuracies in their reports violated the Act. *Id.* at 336. The Supreme Court concluded that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 341. A consumer cannot allege a "bare procedural violation" sufficient to confer standing, the Court held, without also alleging the violation caused him injury. *Ibid.* See also *Pearce v. Am. Def.*

*Life Ins.*, 343 S.E.2d 174, 180 (N.C. 1986) (consumer must show he suffered an actual injury as a proximate result of defendant's deceptive statement or misrepresentation to bring claim under consumer-protection statute); *Flores v. Rawlings Co.*, 177 P.3d 341, 358 (Haw. 2008) (granting summary judgment under consumer-protection statute because claimants did not "demonstrate[] that they were injured as a result of [business's] violation" of the statute).

Likewise, in *Casillas v. Madison Avenue Associates, Inc.*, in an opinion by then-Judge Barrett, the Seventh Circuit concluded that because a violation of the Fair Debt Collection Practices Act did not actually harm the plaintiff/claimant, there was no standing. 926 F.3d 329, 332 (7th Cir. 2019) (Barrett, J.). The Act requires debt collectors to notify consumers about the statutory process for verifying a debt. *Id.* at 331. One of Casillas's creditors sent her a dunning letter that did not notify her that she had to respond to the debt collector in writing to trigger the statutory protections. *Ibid.* Casillas filed a class action against the debt collector alleging that her only harm was her receipt of a non-compliant letter, and she sought statutory damages. *Id.* at 331–32. The court emphasized that just because "Congress has authorized a plaintiff to sue a debt collector who 'fails to comply with any requirement [of the Fair Debt Collection Practices Act],' 15 U.S.C. § 1692k(a), does not mean that [the plaintiff] has standing." *Id.* at 333 (citing *Spokeo*, 578 U.S. at 341). Because the debt collector's mistake "didn't put Casillas in harm's way, it was nothing more than a 'bare procedural violation'" that could not, by itself, satisfy the injury-in-fact requirement necessary to confer standing. *Id.* at 334 (quoting *Spokeo*, 578 U.S. at 341).

Moreover, the requirement that these consumer-protection statutes call for an actual injury—beyond a mere procedural violation—does not render their statutory-damages provisions a nullity or discourage injured consumers from bringing these claims. "Generally, 'statutory damages are reserved for cases in which the damages caused by a violation are small or difficult to ascertain.'" *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 729 n.5 (7th Cir. 2016) (quoting *Perrone v. Gen. Motors Acceptance Corp.*, 232 F.3d 433, 436 (5th Cir. 2000)). In future cases, claimants may still take advantage of the statutory-damages provisions, provided they sustained actual damages that are less than any statutory-damages threshold:

"[P]laintiff[s] may still seek statutory damages if the actual damages caused by the violation are small or difficult to ascertain." *Ibid.*

As for subsection 4(a) of our own Act, so long as a claimant proves he detrimentally relied on a deceptive act, he can sue under the statute and recover statutory damages, even if his actual damages are "small or difficult to ascertain." *Ibid.* In this way, subsection 4(a) guarantees a minimum amount of damages to encourage injured consumers to bring these claims.

B

In his amended counterclaim, Gardner alleged he detrimentally relied on Hoosier's deceptive acts, as required under subsection 4(a). He claimed that he and the other class members "relied upon [the] deceptive acts perpetrated by Hoosier" and "suffered damages as a result of the deceptive acts." These injury allegations were sufficient to confer standing at the litigation's pleading stage. *Collins Asset Grp.*, 139 N.E.3d at 714.

But later, in his response to Hoosier's motion for summary judgment, Gardner again argued that he and other class members detrimentally relied on Hoosier's deceptive acts: "As people relying on Hoosier's incurable deceptive acts, all members of the class that signed Hoosier's HICA-noncompliant contract suffered an injury that yields statutory damages through Indiana Code § 24-5-0.5-4." But the summary-judgment phase raises the threshold for proving an injury. Hoosier met its initial burden of showing there was no genuine issue of material fact concerning Gardner's detrimental reliance. The burden then shifted to Gardner, who could not rest on general allegations or the denials of his pleadings, but had to designate specific evidence of his detrimental reliance on Hoosier's deceptive acts. *Scripture*, 51 N.E.3d at 252 (citing T.R. 56(E)). The problem for Gardner is that the documents attached to his summary-judgment response showed Hoosier's deceptive acts did not harm him at all.

Gardner's affidavit detailed the procedural violations that Hoosier committed, but also stated that he "told Hoosier that [he] would not be working with them due to what [he] believed to be their dishonest business practices." In his deposition, Gardner explained that he hired a

different company to repair his roof for about $18,000, far below Hoosier's estimate of nearly $60,000. This evidence proves that Hoosier's deceptive acts did not "put [Gardener] in harm's way", *Casillas*, 926 F.3d at 334, or leave him worse off than he would have been had Hoosier not violated the Act. *Detrimental Reliance, supra*.

At oral argument, Gardner underscored that his claimed injury—the "detriment" he allegedly suffered—was indistinct from Hoosier's procedural violations of the Act: "the detriment, I think, is the deceptive act itself." Oral Argument at 25:31. But as we have emphasized, any such violations are insufficient by themselves to confer standing. On this record, Hoosier's deceptive acts did not hoodwink Gardner. He paid Hoosier nothing and hired a different company to repair his roof for less than Hoosier would have charged him. A deceptive act that deceives no one injures no one. If Hoosier's deception had succeeded, the outcome here would likely be different. For example, if Hoosier had duped Gardner into completing the roof repairs for $60,000, that would have amounted to detrimental reliance and damages of $42,000. But that is not the record before us.

Based on the evidence presented at summary judgment, Gardner did not meet his burden to create a genuine factual issue that he was injured. See *Scripture*, 51 N.E.3d at 252 (citing T.R. 56(E)). Because he failed to prove injury consonant with our summary-judgment standard, Gardner and the class members did not satisfy the injury requirement for standing. I.C. § 24-5-0.5-4. Thus, dismissal of Gardner's amended counterclaim against Hoosier is warranted here. This holding moots any issue concerning the class-action notice.

Our disposition today does not mean that Hoosier necessarily escapes legal liability for its business practices generally or even its practices as to Gardner specifically. The attorney general retains enforcement authority to seek any number of statutory remedies against those that violate the Act, including obtaining injunctions and securing civil penalties. *Id.* §§ 24-5-0.5-4(c), 24-5-0.5-8.

\*　　\*　　\*

For these reasons, we reverse the trial court's denial of Hoosier's motion for summary judgment and remand with instructions to dismiss Gardner's counterclaim for lack of standing. And we affirm the trial court's denial of Gardner's motion for partial summary judgment.

Massa and Molter, JJ., concur.
Goff, J., concurs in the judgment with separate opinion in which Rush, C.J., joins.

ATTORNEYS FOR APPELLANT/CROSS-APPELLEE HOOSIER
CONTRACTORS, LLC
William N. Riley
Russell B. Cate
Sundeep Singh
RileyCate, LLC
Fishers, Indiana

ATTORNEYS FOR APPELLEE/CROSS-APPELLANT SEAN GARDNER
Paul L. Jefferson
Bradley J. Buchheit
Scott A. Milkey
McNeelyLaw, LLP
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE STATE OF INDIANA
Theodore E. Rokita
Attorney General of Indiana

Thomas M. Fisher
Solicitor General

James A. Barta
Deputy Solicitor General

Angela Sanchez
Chief Counsel, Appeals

Benjamin M.L. Jones

Assistant Section Chief, Civil Appeals

Julia C. Payne

Melinda R. Holmes

Abigail R. Recker

Deputy Attorneys General

Indianapolis, Indiana

**Goff, J., concurring in the judgment.**

I agree with the Court that the Indiana Deceptive Consumer Sales Act requires a plaintiff class to show actual damages were suffered in reliance on a deceptive act. Based on my interpretation of the Act alone, I concur in today's judgment. I write separately, however, to express my concern that the majority's reliance on recent developments in federal standing doctrine could do injury to Indiana law.

# I.  Statutory interpretation resolves this appeal.

As the opinion of the Court relates, Sean Gardner filed a counterclaim "on behalf of a proposed class" against Hoosier Contractors. App. Vol. II, p. 48. The counterclaim alleged reliance on incurably deceptive home improvement contracts. Hoosier moved for summary judgment on the grounds that Gardner, and some members of the class, had no standing to sue because they had suffered "no compensable injury." *Id.* at 70. In response, Gardner asserted that "all members of the class that signed" Hoosier's contracts "suffered an injury that yields statutory damages." App. Vol. IV, p. 178.

When the General Assembly enacts a statute that provides a right of action, it may establish "standing requirements" limiting who is a "proper person to invoke the court's authority." *Solarize Indiana, Inc. v. S. Indiana Gas & Elec. Co.*, 182 N.E.3d 212, 216–17 (Ind. 2022) (citation and quotation marks omitted). Here, the Act provides that "[a] person **relying** upon an uncured or incurable deceptive act may bring an action for the damages actually suffered as a consumer as a result of the deceptive act or five hundred dollars ($500), whichever is greater." Ind. Code § 24-5-0.5-4(a) (emphasis added). It further enables such a person to bring a class action "on behalf of **any class of persons** of which that person is a member and which has been **damaged** by such deceptive act." I.C. § 24-5-0.5-4(b) (emphases added). Conversely, the attorney general is authorized to "bring an action to enjoin a deceptive act" in a subsection that makes no mention of either reliance or damages. I.C. § 24-5-0.5-4(c). Considering the "plain meaning" of the statutory text and "the structure of the statute as a

whole," *ESPN, Inc. v. Univ. of Notre Dame Police Dep't*, 62 N.E.3d 1192, 1195 (Ind. 2016), I conclude that an action may be brought on behalf of a class who suffered damages in reliance on a defendant's acts. The deceptive act itself is not, therefore, a compensable loss in these circumstances. Here, Gardner designated no evidence of loss, harm, or damage beyond the alleged deceptive acts, and therefore Hoosier is entitled to summary judgment.

## II. We should hesitate before following restrictive federal standing doctrine too far.

Aside from the standing conferred by statute, a plaintiff must also satisfy "the common-law standing rule, which derives from our state constitution's separation-of-powers clause." *Solarize*, 182 N.E.3d at 216. Plaintiffs must have "'a personal stake in the outcome of the litigation'" and must "'show that they have suffered or were in immediate danger of suffering a direct injury as a result of the complained-of conduct.'" *Id.* at 217 (quoting *Bd. of Comm'rs of Union Cnty. v. McGuinness*, 80 N.E.3d 164, 168 (Ind. 2017)). Without an injury, "there is no justiciable dispute." *City of Gary v. Nicholson*, 190 N.E.3d 349, 351 (Ind. 2022). A private right of action, therefore, must contain "an injury requirement." *Id.* This much is clear. Rather more controversial is the question of who decides what constitutes an injury—an issue the United States Supreme Court has recently spoken on to guide the federal courts.

In *Nicholson*, we found "instructive" an important case from the Supreme Court. *Id.* In *Lujan v. Defenders of Wildlife*, the Supreme Court addressed the "citizen-suit" provision of the Endangered Species Act, which enabled "any person" to sue to enjoin any other person, including governmental entities, from violating the statute. 504 U.S. 555, 571–72 (1992) (citing 16 U.S.C. § 1540(g)). The Court acknowledged that standing may derive entirely from the invasion of "statutes creating legal rights." *Id.* at 578 (citation and quotation marks omitted). However, Congress could not by statute "convert the undifferentiated public interest in executive officers' compliance with the law into an 'individual right' vindicable in the courts." *Id.* at 577. Otherwise, the federal courts would

usurp the President's duty to "'take Care that the Laws be faithfully executed'" and thus violate the separation of powers. *Id.* at 577 (quoting U.S. Const. art. II, § 3). Rejecting the notion of a "procedural injury" that any person suffered whenever an official failed to follow "correct consultative procedure" under the statute, *id.* at 571–72, the Court required plaintiffs to show an "injury in fact," *id.* at 560. Among other requirements, this meant "an invasion of a legally protected interest" which was "concrete and particularized." *Id.* at 560. This rule of standing limited Congress's power to provide private rights of action without concomitant private injuries. *Lujan* indicated, however, that Congress was authorized to elevate "to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law," such as "an individual's personal interest in living in a racially integrated community." *Id.* at 578 (citation omitted).

In 2016, the Supreme Court took its "concrete" injury requirement a step further. In *Spokeo, Inc. v. Robins*, the Court addressed a provision of the Fair Credit Reporting Act (FCRA) that permitted an individual to sue a consumer-reporting agency for statutory damages over a violation of the statute. 578 U.S. 330, 335 (2016) (citing 15 U.S.C. § 1681n(a)). Robins sued individually and on behalf of a class after he discovered that Spokeo was publishing inaccurate personal information online. *Id.* at 336. Returning to the issue of standing, the Court explained that a "concrete injury must be *de facto*; that is, it must actually exist." *Id.* at 340 (citation and quotation marks omitted). Such an injury could well be "intangible." *Id.* However, to determine "whether an intangible harm constitutes injury in fact," the Court would consider not only "the judgment of Congress" but also "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* at 340–41. The Court then decided for itself that a "violation of one of the FCRA's procedural requirements may result in no harm." *Id.* at 342. The Court ended up remanding the case without deciding whether Robins had demonstrated sufficient "concreteness." *Id.* at 342–43. But the precedent had been set that the Court would review a judgment made by Congress that a statutory

violation bearing on an individual's personal interests should be an actionable injury.

Today's opinion of the Court draws, once again, from federal precedents, discusses *Spokeo*, and specifically borrows the notion of a "mere procedural violation." *Ante*, at 8–9. I note that the opinion does not expressly adopt federal standing law as Indiana law. I am concerned, however, that continued reliance on the United States Supreme Court's standing doctrine could do harm to Indiana law, especially considering where the Court has gone since *Spokeo*.

In 2021, the Supreme Court took yet another step to restrict Congress's power to identify legal injuries in *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190 (2021). That case was brought by a plaintiff whose credit file had inaccurately labeled him a potential terrorist or criminal based on his name. *Id.* at 2201. Ramirez sought statutory damages for himself and a class, alleging that TransUnion had violated the FCRA by failing to reasonably ensure the accuracy of its information and by failing to disclose complete information and adequate notices of consumers' rights. *Id.* at 2202. Some of the class members had inaccurate credit files that were, however, never provided to potential creditors. *Id.* at 2209. The Court held that the "mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm." *Id.* at 2210. Furthermore, although the inaccurate files posed a "risk of future harm," this could not confer standing to seek damages unless and until the harm "materialized." *Id.* at 2211. As to the disclosure claims, the Court acknowledged that the requirements were "designed to protect consumers' interests in learning of any inaccuracies in their credit files." *Id.* at 2213. Yet TransUnion's failings in this regard did not cause anything like the harms "traditionally recognized" in American law. *Id.* The Supreme Court thus undertook to reconsider Congress's judgment that defective credit files and information disclosures pose a risk of harm that deserves to be legally actionable.

The Supreme Court's trajectory on standing is a departure from longstanding jurisprudence, as powerfully expressed by Justice Thomas's dissent (joined by three other justices) in *TransUnion*. Under the common

law, Justice Thomas explained, when an individual sued "for a violation of his private rights," the mere violation was enough to invoke a court's jurisdiction. *Id.* at 2217. This has long been the law in Indiana. A century ago, our Court explained that, in a suit for trespass on land, the plaintiff "may maintain an action against one who wrongfully invades his possession" and "recover nominal damages, without proof of injury." *Indiana Pipe Line Co. v. Christensen*, 188 Ind. 400, 407–08, 123 N.E. 789, 792 (1919). Such remains the law today. *See Reed v. Reid*, 980 N.E.2d 277, 295 (Ind. 2012) ("damages are not an element of trespass"). The United States Supreme Court went astray, Justice Thomas argued, when the rule of *Lujan*, requiring "injury in fact" in a "citizen-suit cause of action" over a "**public** right," displaced the traditional rule in a case where a statute "creates a **private** right and a cause of action." *TransUnion*, 141 S.Ct. at 2220 (emphases added). The result of adopting this doctrine, he continued, was to disable Congress from providing a cause of action to protect "anything other than money, bodily integrity, and anything else that this Court thinks looks close enough to rights existing at common law." *Id.* at 2221. "In the name of protecting the separation of powers," Justice Thomas concluded, "this Court has relieved the legislature of its power to create and define rights." *Id.* (citations omitted).

It is indeed difficult to understand how the separation of powers is imperiled by a court undertaking to "remedy private legal wrongs by awarding relief when there has been a violation of a private right." F. Andrew Hessick, *Standing, Injury In Fact, and Private Rights*, 93 Cornell L. Rev. 275, 319 (2008). To quote Justice Thomas once more, "where one private party has alleged that another private party violated his private rights, there is generally no danger that the private party's suit is an impermissible attempt to police the activity of the political branches." *Spokeo*, 578 U.S. at 347 (Thomas, J., concurring). Rather, it is the legislative power which is put at risk as "the injury-in-fact test has turned into an increasingly serious obstacle to congressional efforts to create new rights and to give people causes of action to vindicate those rights." C. R. Sunstein, *Injury In Fact, Transformed*, 2021 Sup. Ct. Rev. 349, 374 (2021).

Further reliance on cases like *Spokeo* could lead this Court down the road of reviewing whether rights the General Assembly has decided to

protect are sufficiently "concrete" to confer standing. This would be an interference with the power of the legislature to define Hoosiers' rights and to provide remedies, including nominal or statutory damages, when those rights are violated. For this reason, I concur only in today's judgment.

Rush, C.J., joins.